# EXHIBIT A

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**02/17/2017** at 05:32:02 PM

Clerk of the Superior Court
By Sarah Loose,Deputy Clerk

1  Natalie Mirzayan, Esq. - State Bar No. 272217
   LAW OFFICES OF NATALIE MIRZAYAN
2  26632 Towne Centre Drive, Suite 300
   Foothill Ranch, California 92610
3  Telephone: (949) 285-3550
   mirzayanlaw@outlook.com
4

5  Attorneys for Plaintiff OMRAN HAMID and the Class,

6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9           **COUNTY OF ORANGE – CENTRAL JUSTICE CENTER**

10

11  OMRAN HAMID, an individual, on behalf )   CASE NO.: 30-2017-00904483-CU-OE-CXC
    himself and all others similarly situated  )   Judge Glenda Sanders
12  employees,                               )
                                             )   **CLASS AND REPRESENTATIVE ACTION**
13            Plaintiffs,                     )
                                             )   **COMPLAINT FOR DAMAGES,**
14       v.                                   )   **INJUNCTIVE RELIEF, AND RESTITUTION:**
                                             )
15  NIKE RETAIL SERVICES, INC. an Oregon )   **1.    UNLAWFUL COLLECTION OR**
    Corporation; R.J. HILL an Individual; and )        **RECEIPT OF WAGES DUE LABOR**
16  DOES 1 to 200, inclusive                 )        **CODE §§ 221, 224, 225**
                                             )   **2.    FAILURE TO INDEMNIFY FOR**
17            Defendants.                     )        **EXPENDITURES INCURRED IN**
                                             )        **DISCHARGE OF DUTIES LABOR**
18                                           )        **CODE § 2802**
                                             )   **3.    ILLEGAL TERMS OF**
19                                           )        **EMPLOYMENT LABOR CODE §432.5**
                                             )   **4.    FAILURE TO PAY ALL WAGES DUE**
20                                           )        **TO DISCHARGED OR QUITTING**
                                             )        **EMPLOYEES LABOR CODE §§ 201-**
21                                           )        **203**
                                             )   **5.    FAILURE TO FURNISH ITEMIZED**
22                                           )        **STATEMENTS**
                                             )        **CALIFORNIA LABOR CODE §226,**
23                                           )        **246(i)**
                                             )   **6.    FAILURE TO PROVIDE PAID SICK**
24                                           )        **DAYS LABOR CODE §§ 245.5 -249**
                                             )   **7.    FAILURE TO MAINTAIN RECORDS**
25                                           )        **IN VIOLATION OF LABOR CODE §§**
                                             )        **558, 1174, 1174.5, 274.5(a)**
26                                           )   **8.    FAILURE TO PROVIDE SEATS**
                                             )        **LABOR CODE §1198, AND IWC Order**
27                                           )        **No. 7, SEC. 14)**
                                             )   **9.    FAILURE TO FURNISH SAFE AND**
28                                           )        **HEALTHFUL EMPLOYMENT AND**
                                             )        **PLACE OF EMPLOYMENT LABOR**

                                    1
                   **CLASS AND REPRESENTATIVE ACTION**

| | |
|---|---|
| | CODE §§ 6400, 6401, 6306, 6403, 6407 |
| | 10.  FAILURE TO PAY MINIMUM WAGE LABOR CODE §§ 1197, 1194, 1194.2, 1197.1) |
| | 11.  COERCION LABOR CODE § 450 |
| | 12.  INJUNCTIVE RELIEF |
| | 13.  FOR PENALTIES, PURSUANT TO LABOR CODE § 2699(f) FOR VIOLATIONS OF LABOR CODE §§ 201-203, 221, 224, 226, 245.5-249, 450, 432.5, 1174, 1194, 1197, 1198, 1197.1, 2802, 6400, 6401, 6403, 6407, 6306 |
| | 14.  UNFAIR COMPETITION, CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 ET, SEQ. |
| | UNLIMITED JURISDICTION |
| | REQUEST FOR JURY TRIAL |

Plaintiff OMRAN HAMID, individually and on behalf of all other similarly situated employees, and as a private attorney general on behalf of all other current and former aggrieved employees alleges as follows:

**THE PARTIES**

**A.  Plaintiff**

1.      Plaintiff OMRAN HAMID, ("PLAINTIFF") on behalf of himself and all others similarly situated current and former employees in the State of California, on behalf of the general public, and as an "aggrieved employee" on behalf of himself and other similarly situated current and former aggrieved employees (hereinafter the "CLASS" or "PLAINTIFFS) under the Labor Code Private Attorneys General Act of 2004, codified at Labor Code § 2698 et seq.," complains of Defendant NIKE RETAIL SERVICES, INC. ("NIKE"); R.J. HILL ("HILL"); and DOES 1 through 200 (hereinafter collectively referred to as ("DEFENDANTS") and brings this Class Action and Representative Action to recover, among other things, damages, indemnification of expenses, wages unlawfully deducted, injunctive relief, civil and statutory penalties for failure to comply with various California Labor Code sections and the Industrial Welfare Commission Wage Orders 7-

2

1   2001, ("IWO 7"), interest, restitution,  attorneys' fees, and costs and any other appropriate relief for

2   DEFENDANTS' violations of laws.

3       2.      PLAINTIFF is a former non-exempt employee of DEFENDANTS that worked at

4   DEFENDANTS' retail store located in the City of San Clemente, County of Orange, and is an

5   individual residing in Orange County, State of California.  PLAINTIFF reserves the right to name

6   additional class representatives.

7       3.      PLAINTIFFS are current and former non-exempt employees of DEFENDANTS,

8   who hold the position of, among others, Sales Associates (AKA Athletes) for a period of time

9   within the four (4) years preceding the filing of this action.

10      **B.  Defendants**

11      4.      At all relevant times alleged herein, PLAINTIFFS are informed and belief, and

12  thereon allege that NIKE is, and at all times relevant hereto was, a corporation organized and

13  existing under and by virtue of the laws of the State of Oregon.  PLAINTIFFS are further informed

14  and believe, and thereon allege that NIKE is registered and authorized to conduct business in the

15  State of California, and does conduct business in the State of California.  Specifically, upon

16  information and belief, NIKE maintains numerous retail stores and conducts business, and engages

17  in illegal business practices and policies, in the County of Orange, State of California.

18      5.      PLAINTIFFS are informed and belief, and based thereon allege that at all times

19  mentioned herein Defendant R.J. Hill ("HILL") is a resident of the State of California, County of

20  Orange.  PLAINTIFF is informed and believes, and thereon alleges, that Defendant HILL is the

21  Retail District Director, directly oversees, controls, and manages multi-store operation and was

22  directly in charge of the District.  PLAINTIFF is informed and believes, and thereon alleges, that

23  HILL permitted and authorized the wrongful acts and practices against the PLAINTIFF and the

24  CLASS within his district while overseeing multi-store operation.

25      6.      The true names and capacities of DOES 1 through 200, inclusive, are unknown to

26  PLAINTIFFS who therefore sue said DOE defendants by fictitious names.  PLAINTIFFS will

27  amend this Complaint to show their true names and capacities when they have been ascertained.

28  The DEFENDANTS, and each of them, were alter egos of each other and/or engaged in a joint

3

**CLASS AND REPRESENTATIVE ACTION**

enterprise with each other.  Additionally, all of the DEFENDANTS were joint employers of the PLAINTIFFS.  Hereinafter in this Complaint, unless otherwise specified, reference to DEFENDANTS, shall refer to DEFENDANTS, and each of them.

7.      PLAINTIFFS are informed and believe, and based thereon allege that at all times herein mentioned, that each of the DEFENDANTS is liable as an "employer" and/or "person" for the claims asserted in this Complaint, including but not limited to, under Labor Code § 558.1 and §18.

8.      At all relevant times herein, PLAINTIFFS were employed by DEFENDANTS under employment agreements that were partly written, partly oral, and partly implied.  In perpetrating the acts and omissions alleged herein, DEFENDANTS, and each of them, acted pursuant to and in furtherance of their polices and practices of not paying PLAINTIFFS the mandated minimum wage, and all wages earned and due, through methods and schemes which include but not limited to, failing to indemnify PLAINTIFFS for expenditures in discharge of their duties; failing to properly maintain records; failing to provide accurate itemized wage statements for each pay period; failing to pay each former employee any of the wages due and owing; failing to furnish employment and a place of employment that is safe and healthful for employees; requiring employees and applicants to agree to illegal employment terms and conditions; failing to provide employees paid sick leave; and failing to provide employees with suitable seating in violation of various California Labor Codes and Industrial Welfare Commission ("IWC") Orders.

9.      PLAINTIFFS are informed and believe, and based thereon allege that at all times relevant herein, each of the DEFENDANTS named herein was an employer, was the principle, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of each of the other DEFENDANTS named herein, and, in doing the acts and in carrying out the wrongful conduct alleged herein, was engaged with some or all of the other DEFENDANTS in a joint enterprise for profit, and bore such other relationships to some or all of the other DEFENDANTS so as to be liable for their conduct with respect to the matters alleged in this Complaint.  PLAINTIFFS are further informed and believe and thereon allege that each of the DEFENDANTS acted pursuant to

4

**CLASS AND REPRESENTATIVE ACTION**

1   and within the scope of the relationships alleged above, and that all relevant times, each of the

2   DEFENDANTS knew or should have known about, authorized, ratified, adopted, approved,

3   controlled, aided and abetted the conduct of all other Defendants.

4         10.    13.    At all times mentioned herein, each of the DEFENDANTS was the co-

5   conspirator, agent, servant, employee, and/or joint venturer of each of the other DEFENDANTS

6   and was acting within the course and scope of said conspiracy, agency, employment, and/or joint

7   venture and with the permission and consent of each of the other DEFENDANTS.

8         11.    PLAINTIFFS are informed and believe and thereon allege that each and every of the

9   acts and omissions alleged herein were performed by, and/or attributable to, all DEFENDANTS,

10  each acting as agents and/or employees, and/or under the directions and control of each of the other

11  DEFENDANTS, and that said acts and failure to act were within the course and scope of said

12  agency, employment and/or directions and control.

13        12.    As a direct and proximate result of the unlawful actions of DEFENDANTS,

14  PLAINTIFFS have suffered and continue to suffer from loss of earnings in amounts as yet

15  unascertained, but subject to proof at trial and within the jurisdiction of this Court.

16  **JURISDICTION**

17        13.    This Court is the proper court, and this action is properly filed in the Superior Court

18  of the State of California, County of Orange, because DEFENDANTS maintain retail stores, and

19  facilities and transact business in the County of Orange, and because DEFENDANTS' illegal

20  policies and practices which are the subject of this action were applied, at least in part, to the

21  PLAINTIFF in the County of Orange.

22  **FACTUAL BACKGROUND**

23        14.    This is a Class Action and Representative Action, brought pursuant to California

24  Code of Civil Procedure §382, California Business and Professions Code § 17200 et seq., and the

25  Labor Code Private Attorney General Act 2004 ("PAGA"), California Labor Code § 2698 *et seq.*

26        15.    PAGA permits an "aggrieved employee" to bring a lawsuit on behalf of himself and

27  other current and former employees to address an employer's violations of the California Labor

28  Code.

5

**CLASS AND REPRESENTATIVE ACTION**

16.     **The NIKE Uniforms:** DEFENDANTS engage in a policy and practice of violating California Labor Code section 1198 and IWC Order No. 7-2001 subdivision 9(A), codified in California Code of Regulations, title 8 section 11070, subdivision 9(A), which provides that "[when uniforms are required to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer.  Subdivision 9(A) further provides that [t]he term 'uniform' includes wearing apparel and accessories of distinctive design or color." By failing to provide PLAINTIFF and the CLASS with required NIKE-Branded clothing ("UNIFORMS" or "STAFF DRESS") free of charge, DEFENDANTS failed to comply with the requirements of Labor Code section 1198 and IWO subdivision 9(A).

17.     DEFENDANTS' policy and practice of requiring PLAINTIFFS to pay for the UNIFORMS, constitute an on-going violation of Labor Code § 1199, which provides, in relevant part:

> "Every employer or other person acting either individually or as an officer, agent, or employee of another person is guilty of a misdemeanor and is punishable by a fine of not less than one hundred dollars ($100) or by imprisonment for not less than 30 days, or by both, who does any or the following:
>
> (b) Violates or refuses or neglects to comply with any provision of this chapter or any order or ruling of the commission."

18.     The NIKE apparel items constitute "uniform" within the meaning of subdivision 9(A) of the IWC Order, because such distinctive items of athletic clothing displaying the NIKE logos are unusual and generally not usable in PLAINTIFFS' occupation.

19.     The clothing PLAINTIFFS are required to wear are of particular design so distinctive as to require that the employer pay the costs of such clothes.

20.     DEFENDANTS engage in a policy and practice requiring PLAINTIFF and the CLASS to pay income taxation on approximately fifty percent (50%) of the alleged retail value of said UNIFORMS.  More specifically, DEFENDANTS allege that the UNIFORMS (referred to by DEFENDANTS as "STAFF DRESS" is additional compensation compelling each employee to pay taxes for the value of the UNIFORMS.   DEFENDANTS' practice is reflected as "Additional Taxable Other Compensation," on PLAINTIFFS' wage statements.  This so called "Additional

6
**CLASS AND REPRESENTATIVE ACTION**

Taxable Other Compensation" for the alleged value of the UNIFORMS subjects the PLAINTIFF and the CLASS to unlawful wage deductions[1] which DEFENDANTS failed to reimburse. Each season when the UNIFORMS are distributed, the value of the UNIFORMS is solely determined by DEFENDANTS.

21.    PLAINTIFF and the CLASS, are required to accept and wear the UNIFORMS during working hours. DEFENDANTS require PLAINTIFF and the CLASS to maintain an up-to-date apparel of each seasons' product line. PLAINTIFFS are minimum wage earners, yet, are required to purchase the UNIFORMS an average of four times a year and on an on-going basis and pay taxation on their value.

22.    DEFENDANTS' UNIFORMS policy is specifically designed to give DEFENDANTS' a competitive advantage over other sports apparel retailers. This policy is also meant to deliver DEFENDANTS' current fashion message to the public, to complete the visual merchandising of DEFENDANTS' stores, to guide DEFENDANTS' customers to purchase complete athletic wardrobes, as opposed to single items, and to mislead customers to believe that sales associates are loyal fans of NIKE's merchandise. PLAINTIFFS are manipulated to become walking advertisements of the store exemplifying the athlete image DEFENDANTS want to portray to their customers at the expense of requiring PLAINTIFFS to bear the cost of the UNIFORMS.

23.    DEFENDANTS' unlawful practice of wage deductions impact the net wages received by each member of the CLASS, not only for the pay period in which the UNIFORMS are taxed but also all subsequent pay periods because of the resulting inaccurate increase of the "Year to Date Compensation" leading to inaccurate withholding, deductions, and inaccurate wage statements.

24.    DEFENDANTS' policies are despicable and are enforced through oppressive and fraudulent means, as described herein. DEFENDANTS' acts were committed and continue to be

---

[1] Due to each employee's income being improperly inflated, PLAINTIFFS suffer wage loss as a result of the additional taxation attributable to the UNIFORMS.

**CLASS AND REPRESENTATIVE ACTION**

1  committed with malice, and constitute despicable conduct that is carried on by DEFENDANTS

2  with a willful and conscious disregard of the right of their employees to be reimbursed and paid

3  minimum wage.  The DEFENDANTS' unlawful acts and unfair labor practices have affected all

4  members of the CLASS in a similar manner, i.e., all members of the CLASS have been forced to

5  pay the tax consequences of the UNIFORMS (NIKE brand products) as a condition of their

6  employment.

7      25.    DEFENDANTS' UNIFORMS policy also violate California Labor Code § 450,

8  which provides in pertinent part:

9

10     a)  No employer, or agent of officer thereof, or other person may compel or coerce any
           employee, or applicant for employment, to patronize his or her employer, or any other

11         person, in the purchase of a thing of value.

12     26.    **Failure To Pay Of Minimum Wages**: DEFENDANTS engages in a policy and

13  practice of suffering their non-exempt employees to work for less than the minimum wage (state or

14  local) by requiring PLAINTIFFS to pay taxation on the value of their UNIFORMS without any

15  reimbursement.

16     27.    More specifically, subjecting PLAINTIFFS to pay taxation on the value of the

17  UNIFORMS, assessed solely by DEFENDANTS, necessarily causes PLAINTIFFS' wages to fall

18  below the required state or local minimum wage for each pay period in which the UNIFORMS

19  were purchased. PLAINTIFFS are minimum wage earners, yet, are required to purchase the

20  UNIFORMS an average of four time a year on an on-going basis.

21     28.    **Failure To Provide Suitable Seats:** DEFENDANTS' also engage in a policy and

22  practice of violating California Labor Code section 1198 and IWC Order No. 7-2001 section

23  14(A)[2] by failing to provide suitable seats to PLAINTIFFS despite the fact that the nature of their

24  work reasonably permits the use of seats.

25

26  [2] All working employees shall be provided with suitable seats when the nature of the work

27  reasonably permits the use of seats." *Id.*, IWC Order 7-2001 section. 14(A).

28

**CLASS AND REPRESENTATIVE ACTION**

29. **Sharing Of The Walkie-Talkie Earphones**[3]**:** DEFENDANTS' engage in a policy and practice of violating California Labor Code sections 6400, 6401, 6403, and 6407 by requiring PLAINTIFFS to carry walkie-talkies and interchange, among themselves, the wireless earphones used with the walkie-talkies. The Walkie-talkies and earphones are provided by DEFENDANTS and DEFENDANTS mandate that all employees carry the walkie-talkies and wear the earphones during working hours to be able to communicate with team members throughout the working hours.

30. To reduce the cost of doing business, DEFENDANTS fail to assign to each of the PLAINTIFFS earphones to be worn exclusively by each. Rather, DEFENDANTS compel PLAINTIFFS to interchange and share the earphones among themselves.

31. DEFENDANTS have designated an earphone rack at each retail store in California, requiring PLAINTIFFS to surrender their earphones prior to departing the store by placing each earphone on the designated rack. This unsanitary and unhealthful practice results in each earphone being interchanged and worn several times per day by DEFENDANTS' employees following direct contact with each employee's ear.

32. This unhealthful and unsanitary practice, exposes PLAINTIFFS to the risk of various infections, illnesses, and diseases which are transmitted based on close contact with the skin, ear wax, and body fluids (sweat), causing bacteria, and virus to easily spread among the employees.

33. DEFENDANTS' policy and practice, is exactly the biological hazard, described in the *Informational Booklet on Industrial Hygiene, OSHA 3143-1998,* "Biological hazard, these include bacteria, viruses, fungi, and other living organisms that can cause acute and chronic infections by entering the body either directly or through breaks in the skin."

34. The risk of infection caused by bacteria, viruses, fungi, and other living organisms that can cause acute and chronic infections by entering the body either directly or through breaks in

---

[3] Applicable for the purpose of PAGA penalties.

**CLASS AND REPRESENTATIVE ACTION**

the skin is seriously heightened if at least one of the employees sharing the earphone has bloody scabs around the ear.

35. **<u>Failure To Provide Paid Sick Days, Accurate Wage Statements, Or Separate Written Statements In Lieu Thereof, And Failure to Maintain Required Records:</u>** Upon information and belief, DEFENDANTS engage in a policy and practice of violating California Labor Code 246(a) by failing to provide PLAINTIFFS with paid sick days to accrue at a rate of not less than one hour per every 30 hours worked, or in the alternative comply with the requirements of section 246(e)(2) or 246(b)(3).

36. PLAINTIFFS are informed and believe, and thereon allege, that DEFENDANTS knew or should have known that DEFENDANTS were obligated to provide PLAINTIFF and the CLASS with paid sick leave benefits, but failed to do so.

37. Upon information and belief, DEFENDANTS engage in a policy and practice of violating California Labor Code §§ 246(i) by failing to provide PLAINTIFFS with written notices setting forth the amount of paid sick leave available, or PTO leave that DEFENDANTS provide in lieu of sick leave, for use either on each employees' itemized wage statements as described in Section 226 or in a separate writing provided on the designated pay date with each employees' payment of wages.

38. DEFENDANTS engage in a policy and practice of issuing itemized wage statements to PLAINTIFFS containing blank sections appearing under "PAID TIME OFF," and "BALANCE. Furthermore, blank sections also appear under: "ESPP PERIOD," and "BALANCE."

39. DEFENDANTS knew or should have known that PLAINTIFF and the CLASS were entitled to receive itemized wage statements or separate written statements showing the amount of paid sick leave available, or paid time off provided in lieu of sick leave.  In violation of the California Labor Code, DEFENDANTS failed to provide PLAINTIFF and the CLASS members with itemized wage statements or separate written statements showing this information.

40. Upon information and belief, DEFENDANTS failed to maintain records documenting PLAINTIFFS' accrued and used sick leave in violation of Labor Code § 247.5(a).

**CLASS AND REPRESENTATIVE ACTION**

41.     Upon information and belief, DEFENDANTS engage in a policy and practice of willfully and intentionally failing to furnish PLAINTIFS with accurate itemized wage statements in compliance with the statutory requirement of §226(a) which requires employers to maintain accurate records for each employee's hours of work and to provide each employee with an accurate wage statements in writing setting forth, among other things, the gross wages earned; total hours worked by the employee; net wages earned; all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee, and all deductions made.

42.     Based upon information and belief, DEFENDANTS issue the same formatted wage statements to all non-exempt, hourly-paid employees in California, irrespective of their work location.

43.     PLAINTIFFS are informed and believe, and thereon allege that DEFENDANTS engage in a policy and practice of maintaining payroll records, and records pertaining to current and former employees outside of "the state" in violation of Labor Code § 1174(d).

44.     Upon information and belief, DEFENDANTS maintain payroll records at a centralized location in their corporate headquarters in Beaverton, Oregon.  When DEFENDANTS' employees request their payroll records through Human Resources, NIKE would mail the requesting employee's payroll records in an envelope clearly reflecting postal stamp "mailed from zip code 97005, Beaverton, OR."

45.     PLAINTIFFS are informed and believe, and thereon allege, that DEFENDANTS knew or should have known that they had a duty to maintain accurate and complete payroll records in this state in accordance with the Labor Code and applicable IWC Wage Order, but willfully, knowingly, and intentionally failed to do so.

46.     **Failure To Timely Pay Wages Earned Upon Termination**: PLAINTIFFS are informed and believe, and thereon allege, that DEFENDANTS knew or should have known that PLAINTIFF and the CLASS were entitled to timely payment of all wages earned upon termination of employment.  In violation of the California Labor Code, PLAINTIFF and the CLASS did not

1  receive payment of all wages due, including, but not limited to, minimum wages, and unlawful

2  wage deductions as a result of DEFENDANTS' UNIFORMS policy.

3      47.    **Illegal Terms And Conditions Of Employment**: Upon information and belief

4  DEFENDANTS required PLAINTIFFS to agree to illegal employment terms and conditions in

5  violation of Labor Code § 432.5.  In particular, PLAINTIFF and CLASS members received the

6  same standardized documents and/or written policies.  Upon information and belief, the usage of

7  standardized documents and/or written policies, including new hire documents, indicate that

8  DEFENDANTS dictated policies at the corporate level and implemented them company-wide,

9  regardless of their employees' assigned locations or positions.

10      48.    Upon information and belief, DEFENDANTS set forth company-wide policies and

11  procedures in documents provided at PLAINTIFFS' time of hire, including but not limited to the

12  "Retail New Hire Acknowledgment Form" (attached hereto as Exhibit "1") requiring PLAINTIFF

13  and the CLASS to agree that the UNIFORMS provided are taxable wages thereby reducing

14  PLAINTIFFS' wages received below the mandated minim wage and without any reimbursement.

15      49.    At the time PLAINTIFF was hired, he received, among other documents, electronic

16  version of the "NIKE U.S. Employee Handbook: Employment Polices & Guidelines," and the

17  "NIKE U.S. Employee Handbook, Human Resources/ Compensation & Benefits" informing him

18  that he would be subject to the policies and rules set forth in the documents provided.

19      50.    On information and belief, all transactions regarding hiring, terminations,

20  promotions, pay increases, and employee transfers, etc., relating to DEFENDANTS' California

21  employees were submitted to and processed by DEFENDANTS' HR department in Beaverton,

22  Oregon.  Additionally, on information and belief, DEFENDANTS' corporate records, business

23  records, data, and other information related to NIKE including in particular HR records pertaining

24  to DEFENDANTS' California employees, are also maintained at NIKE's corporate headquarters in

25  Beaverton, Oregon.

26      51.    PLAINTIFFS are informed and believe, and thereon allege, that at all times herein

27  mentioned, DEFENDANTS were advised by skilled lawyers and other professionals, employees

28  and advisors knowledgeable about California labor and wage law, employment and personnel

1    practices, and about the requirements of California law.   However, DEFENDANTS have

2    knowingly and willfully refused to perform their obligations under California Labor Code.

3    **CLASS ACTION ALLEGATIONS**

4        52.      PLAINTIFF brings this lawsuit as a class action under Cal. Code Civ. Proc. Section

5    382, California Business and Professions Code § 17200 et seq., and the Labor Private Attorney

6    General Act, California Labor Code § 2698 et seq., on behalf of himself and all persons within the

7    class ("CLASS") as follows:

8    **THE CLASS**

9        53.      All current and former employees, who were employed by DEFENDANTS in the

10    State of California for a period of time within the four (4) years preceding the filing of this action

11    until the time of trial, "THE RELEVANT TIME PERIOD" in the position of Sales Associates[4], or

12    similar positions, who were subjected to DEFENDANTS' unlawful acts as stated herein.

13        54.      PLAINTIFF reserves the right under Rule 3.765, California Rules of Court, to

14    amend or modify the CLASS description with greater specificity or further division into subclasses

15    or limitations to particular issues.

16        55.      Pursuant to San Francisco Administrative Code Chapter 12R, et seq., PLAINTIFF

17    seeks a sub-class of employees who worked in San Francisco and were subject to a higher

18    minimum wage.

19        56.      Pursuant to Los Angeles Minimum Wage Ordinance, PLAINTIFF seeks a sub-class

20    of employees who worked in Los Angeles and were subject to a higher minimum wage.

21        57.      Pursuant to San Francisco Administrative Code Chapter 12R, et seq., PLAINTIFF

22    seeks a sub-class of employees who worked in San Francisco and were entitled to enhanced paid

23    sick leave rights.

24        58.      Pursuant to Los Angeles Ordinance No. 184319, PLAINTIFF seeks a sub-class of

25    employees who worked in Los Angeles and were entitled to enhanced paid sick leave rights.

26

27 _____

[4] NIKE refers to its Sales Associates as "Athletes."

28

13
**CLASS AND REPRESENTATIVE ACTION**

59.    This action has been brought and may properly be maintained as a class action under the provisions of § 382 of the Code of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed CLASS is easily ascertainable.   This action is appropriately suited for a Class Action because:

60.    **Ascertainable Class:** The CLASS is ascertainable in that its members may be identified and located using information contained in DEFENDANTS' personnel records.

61.    **Numerosity:** The potential members of the CLASS as defined are so numerous that joinder of all members of the CLASS is impracticable.  While the precise size of the CLASS has not been ascertained at this time, PLAINTIFF is informed and believes, and based thereon alleges, that DEFENDANTS currently employee, and during THE RELEVANT TIME PERIOD employed, well over 7000 persons in the State of California who fall within the CLASS definition.

62.    Accounting for employees' turnover during THE RELEVANT PERIOD necessarily increases this number.  PLAINTIFFS allege that DEFENDANTS' employment records would provide information as to the number and location of members of the CLASS.  Joinder of members of the CLASS is not practicable.

63.    **Common Questions of Fact or Law:** This action involves questions of law and fact common to the CLASS that predominate over questions affecting only individual class members. The common questions of law and fact focuses on DEFENDANTS' systematic course of illegal practices and policies, which were applied to the entire CLASS in violation of the California Labor Code, IWC Orders, the California Business and Professions Code, which prohibits unfair business practices arising from such violations, and the PAGA.   These common questions of law and fact include, without limitations:

    a.    Whether DEFENDANTS failed to reimburse PLAINTIFFS for expenses incurred in the performance of their job duties, in violation of Labor Code § 2802;

    b.    Whether the UNIFORMS deductions are unlawful under Labor Code §§ 221, 224, and 225;

    c.    Whether DEFENDANTS' UNIFORMS policy violate Labor Code § 450;

14

**CLASS AND REPRESENTATIVE ACTION**

d. Whether DEFENDANTS are subject to the requirements of Wage Order 7-2001, section 9(A);

e. Whether DEFENDANTS failed to pay PLAINTIFFS minimum wage as mandated by state and local laws;

f. Whether DEFENDANTS failed to furnish PLAINTIFFS a place of employment that is safe and healthful in violation of Labor Code §§ 6400, 6401, 6403, and 6407 subjecting them to penalties under the PAGA;

g. Whether DEFENDANTS required PLAINTIFFS to agree to illegal employment terms and conditions in violation of Labor Code § 432.5;

h. Whether DEFENDANTS failed to provide PLAINTIFFS paid sick leave in violation of Labor Code § 246(a) and local ordinances;

i. Whether DEFENDANTS failed to issue PLAINTIFFS accurate written notices setting forth the amount of paid sick leave available in violation of Labor Code § 246(i);

j. Whether DEFENDANTS failed to maintain for at least three years records documenting PLAINTIFFS' accrued and used sick leave in violation of Labor Code § 247.5(a);

k. Whether DEFENDANTS failed to issue accurately itemized wage statements to PLAINTIFFS, in violation of Labor Code §§ 226(a);

l. Whether DEFENDANTS paid PLAINTIFFS their final wages beyond the time frames set forth in Labor Code §§ 201-203;

m. Whether DEFENDANTS are subject to the requirements of IWC Wage Order 7-2001, section 14(A);

n. Whether the job of Sales Associate reasonably permits the use of a seat;

o. What type of seat would be suitable.

64. **Typicality:** The claims of the PLAINTIFF are typical of the CLASS because DEFENDANTS subjected all of their Sales Associates/Athletes to identical violations of the California Labor Code, the PAGA and California Business and Professions Code by, *inter alia*,

15

**CLASS AND REPRESENTATIVE ACTION**

1  failing to pay PLAINTIFFS state and local mandated minimum wage; failing to reimburse

2  PLAINTIFFS for reasonable expenses incurred in the discharge of their duties; failing to properly

3  maintain PLAINTIFFS' records; failing to provide PLAINTIFFS accurate itemized statements for

4  each pay period; failing to furnish PLAINTIFFS employment and a place of employment that is

5  safe and healthful; requiring PLAINTIFFS to agree to illegal terms and conditions of employments;

6  failing to provide PLAINTIFFS with paid sick leave; and failing to provide PLAINTIFFS with

7  suitable seating.

8       65.  **Adequacy of Representation:** PLAINTIFF is fully prepared to take all necessary

9  steps to represent fairly and adequately the interest of the members of the CLASS.  PLAINTIFF

10  has no interests that are adverse to the interests of the CLASS.  PLAINTIFF'S attorneys are ready,

11  able and willing to fully and adequately represent the CLASS and individual PLAINTIFF.

12       66.  **Superiority of Class Action:** A class action is superior to other available means for

13  the fair and efficient adjudication of this controversy.  Individual joinder of all proposed members

14  of the CLASS is not practicable, and questions of law and fact common to the proposed CLASS

15  predominate over any questions affecting only individual members of the proposed CLASS.  Each

16  member of the proposed CLASS has been damaged and is entitled to recovery by reason of

17  DEFENDANTS' illegal policies and/or practices.

18       67.  Class action treatment will allow those similarly situated persons to litigate their

19  claims in the manner that is most efficient and economical for the parties and the judicial system.

20  PLAINTIFF is unaware of any difficulties that are likely to be encountered in the management of

21  this action that would preclude its maintenance as a class action.   Individualized litigation would

22  also present the potential for inconsistent or contradictory judgments, in addition of duplication of

23  efforts and expenses.

24      **PLAINTIFF EXHAUSTED HIS ADMINISTRATIVE REMEDIES**

25       68.  PLAINTIFF met all the jurisdictional requirements of proceeding with claims for

26  civil penalties under the Labor Code Private Attorney's General Act ("PAGA"), codified at Labor

27  Code, Section 2698 et seq. by timely giving written notice in the manner required by Labor Code §

28  2699.3 at the time of filing.   Specifically, on August 24, 2016, per SB 836, which became

16

**CLASS AND REPRESENTATIVE ACTION**

effective on June 27, 2016, PLAINTIFF exhausted his administrative remedies by notifying NIKE via certified U. S. Mail, by electronic mail to Labor and Workforce Development Agency ("LWDA") (a true and correct copy is attached and incorporated herein as Exhibit "2"), and by electronic mail to the Division of Occupational Safety and Health, better known as Cal/OSHA (a true and correct copy is attached and incorporated herein as Exhibit "3").  More than 60 days elapsed after PLAINTIFF'S notification letters were sent and PLAINTIFF'S counsel received no notice from LAWD nor Cal/OSHA stating their intention to investigate or prosecute the claims.

69. Therefore, PLAINTIFF alleges the right to proceed with all remedies provided by law on PLAINTIFF' Complaint herein, with civil and all statutory penalties which are collectible by PLAINTIFFS under the provisions of Labor Code §§ 2698-2699.5, PAGA.

70. PLAINTIFF makes the allegations in this Complaint without any admission to any particular allegation.  PLAINTIFF bears the burden of pleading, proving, or persuading and PLAINTIFF reserves all of PLAINTIFF'S rights to plead the alternative.

**FIRST CAUSE OF ACTION**
**UNLAWFUL COLLECTION OR RECEIPT OF WAGES DUE**
**(LABOR CODE §§ 221, 224, 225)**
**(AGAINST ALL DEFENDANTS)**

71. PLAINTIFFS repeat and re-allege all allegations contained in preceding paragraphs as though fully set forth in this cause of action, and incorporate them by reference, and further allege:

72. Pursuant to California Labor Code § 221 and IWC Orders No. 7-2001, DEFENDANTS are prohibited from collecting or receiving wages, and are required to provide UNIFORMS to their employees free of charge.

73. IWC Orders No. 7-2001, subdivision 9(A), provides that when uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer. The term "uniform" includes wearing apparel and accessories of distinctive design or color.

74. PLAINTIFFS were non-exempt employees entitled to the protections of California Labor Code §§ 221, 224, and Wage Order 7-2001.   During the course of PLAINTIFFS'

17
**CLASS AND REPRESENTATIVE ACTION**

employment, DEFENDANTS, engaged in a policy and practice of requiring PLAINTIFFS to pay income taxation on the value of the UNIFORMS that DEFENDANTS require PLAINTIFFS to wear in the discharge of their duties.  The value of the UNIFORMS appear on PLAINTIFFS' wage statements as "Additional Taxable Other Compensation."  UNIFORMS are valued at hundreds of dollars by DEFENDANTS, thereby, subjecting PLAINTIFFS to unlawful wage collections, deductions and withholdings that DEFENDANTS fail to reimbursed.  DEFENDANTS also charge numerous other persons who are similarly situated to PLAINTIFFS for the same UNIFORMS.

75.    Labor Code § 225 provides in pertinent part that "[t]he violation of any provision of Sections 221... is a misdemeanor."  Labor Code § 225.5 provides in pertinent part that "[i]n addition to, and entirely independent and apart from, any other penalty provided in this article, every person who unlawfully withholds wages due any employee in violation of Section ... 221 ...shall be subject to a civil penalty as follows:

> (a) For any initial violation, one hundred dollars ($100) for each failure to pay each employee.

> (b) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld."

76.    In violation of state law, DEFENDANTS have knowingly and willfully refused to perform their obligations to provide UNIFORMS free of charge, and have instead charged PLAINTIFFS for UNIFORMS required in the discharge of their duties.

77.    As a direct result, PLAINTIFFS have suffered and continue to suffer, substantial losses related to the use and enjoyment of such wages, loss interest on such wages, and expenses and attorneys' fees, and costs in seeking to compel DEFENDANTS to fully perform their obligations under state law, all to their respective damages in amounts according to proof at times of trial, and within the jurisdiction of this Court.

78.    DEFENDANTS committed the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring PLAINTIFFS, from improper motives amounting to malice, and in conscious disregard of PLAINTIFFS' rights.

18

**CLASS AND REPRESENTATIVE ACTION**

79.    PLAINTIFFS are thus entitled to recover the unpaid balance of compensation due, wages owed, interest, civil and statutory penalties, nominal, actual, compensatory, punitive, and exemplary damages, attorneys' fees, and costs of suit in amounts according to proof at time of trial, and within the jurisdiction of this Court.

80.    WHEREFORE, PLAINTIFF and the CLASS seek to request relief as described below.

**SECOND CAUSE OF ACTION**
**FAILURE TO INDEMNIFY FOR EXPENDITURES INCURRED IN DISCHARGE OF DUTIES**
**(LABOR CODE § 2802)**
**(AGAINST ALL DEFENDANTS)**

81.    PLAINTIFFS repeat and re-allege all allegations contained in preceding paragraphs as though fully set forth in this cause of action, and incorporate them by reference, and further allege:

82.    Cal. Lab. Code §2802(a) provides in relevant part that: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer...."

83.    California Code of Regulations, title 8 section 11070, subdivision 9(A) provides in relevant part that: "When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer. The term "uniform" includes wearing apparel and accessories of distinctive design or color."

84.    DEFENDANTS' business is part of the "Mercantile Industry" within the meaning of California Code of Regulations, title 8 section 11070.

85.    DEFENDANTS required the PLAINTIFF and members of the CLASS to purchase and wear NIKE athletic clothing (T-shirts, pants, and shoes) with the NIKE logo and name affixed thereon, in the discharge of their employment duties without reimbursement from DEFENDANTS for the alleged value of the UNIFORMS, which are assessed by DEFENDANTS alone.

86.    By their actions alleged herein, DEFENDANTS violated § 2802 of the California Labor Code and California Code of Regulations, title 8 section 11070.

19
**CLASS AND REPRESENTATIVE ACTION**

87. During THE RELEVANT TIME PERIOD, as a result of the unlawful acts of DEFENDANTS, PLAINTIFF and the CLASS have incurred expenditures and losses in an amount to be determined at trial.

88. Pursuant to California Labor Code § 2802, DEFENDANTS are required to fully reimburse PLAINTIFF and members of the CLASS for all out-of-pocket expenses incurred by them in the performance of their job duties.

89. DEFENDANTS failed to reimburse PLAINTIFF and members of the CLASS for the UNIFORMS that they caused PLAINTIFF and members of the CLASS to pay additional taxation thereupon.

90. Pursuant to Labor Code § 2802, PLAINTIFF and members of the CLASS are entitled to recover from DEFENDANTS the full amount of the expenses they incurred in the performance of their job duties, plus interest, reasonable attorneys' fees, and costs of suit, and penalties.

91. As a direct and proximate result of DEFENDANTS' unlawful failure to reimbursement PLAINTIFF and the CLASS for the UNIFORMS, PLAINTIFF and the CLASS suffered, and will continue to suffer, damages in amounts according to proof at the time of trial.

92. In failing to reimburse PLAINTIFF and the CLASS for the UNIFORMS, DEFENDANTS acted maliciously, oppressively, and despicably, with the wrongful intention of causing injury and hardship to PLAINTIFF and the CLASS by reaping economic gain at PLAINTIFF and the CLASS' expenses, in willful and conscious disregard of PLAINTIFFS' statutory and regulatory rights.

WHEREFORE, PLAINTIFF and the CLASS seek to request relief as described below.

### THIRD CAUSE OF ACTION
### ILLEGAL TERMS OF EMPLOYMENT
### (LABOR CODE §432.5)
### (AGAINST ALL DEFENDANTS)

93. PLAINTIFFS repeat and re-allege all allegations contained in preceding paragraphs as though fully set forth in this cause of action, and incorporate them by reference, and further allege:

**CLASS AND REPRESENTATIVE ACTION**

94.      California Labor Code § 432.5 prohibits employers from requiring any applicant or employee to agree to any illegal employment term or condition.

95.      DEFENDANTS coerced and manipulated, and continue to coerce and manipulate the CLASS to consent in writing for the unlawful deduction of wages attributed to the "Additional Taxable Other Compensation" for the alleged value of UNIFORMS.  All retail employees must accept as a condition or term of their employment the UNIFORMS at least 4 times a year.

96.      PLAINTIFF and the CLASS were required to sign and date "Retail New Hire Policy Acknowledgment Form" specifically stating the following:

> "Retail Staff Package Agreement: It is my understanding that the total amount of my uniforms provided to me by Nike Inc. will be considered taxable wages on my paycheck. The total amount will be included in my gross wages and taxed at my current withholdings." (Exhibit "1").

97.      PLAINTIFF and the CLASS suffered, and will continue to suffer, damages in amounts according to proof at the time of trial as a direct and proximate result of DEFENDANTS' willful conduct of requiring PLAINTIFFS to agree to illegal terms and conditions of employment.

98.      PLAINTIFFS are entitled to recover from DEFENDANTS the full amount of the expenses, losses, deductions and withholdings incurred as a result of DEFENDANTS' unlawful policies and practices compelling PLAINTIFFS to consent in writing to illegal terms and conditions of employment, plus interest, reasonable attorneys' fees, and costs of suit and penalties.

WHEREFORE, PLAINTIFF and the CLASS seek to request relief as described below.

**FOURTH CAUSE OF ACTION**
**FAILURE TO PAY ALL WAGES DUE TO DISCHARGED OR QUITTING EMPLOYEES**
**(LABOR CODE §§ 201-203)**
**(AGAINST ALL DEFENDANTS)**

99.      PLAINTIFFS repeat and re-allege all allegations contained in preceding paragraphs as though fully set forth in this cause of action, and incorporate them by reference, and further allege:

100.      Cal. Lab. Code §201 provides in relevant part that: "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

101.      Cal. Lab. Code §202 provides in relevant part that: "[i]f an employee not having a

21

**CLASS AND REPRESENTATIVE ACTION**

written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

102.    As alleged herein, DEFENDANTS failed to pay earned wages to PLAINTIFF and the CLASS who are former employees of DEFENDANTS at the time they became due and payable. Thus, DEFENDANTS violated Cal. Lab. Code §§201 and 202.

103.    As a result of DEFENDANTS' unlawful acts, PLAINTIFF and the CLASS who are former employees of DEFENDANTS' are entitled to recover, pursuant to Cal. Lab. Code §203, continuing wages as a penalty from the due date thereof at the same rate until paid or until this action was commenced; but for no more than 30 days.

104.    DEFENDANTS' failure to pay former employee PLAINTIFFS the respective wages due and owing them was willful, as DEFENDANTS were appraised of wages due, and a demand was made for payment of all wages due.

105.    DEFENDANTS' failure to pay PLAINTIFFS that were former employees all wages due were done with the wrongful and deliberate intention of injuring PLAINTIFFS, from improper motives amounting to malice and in conscious disregard to PLAINTIFFS' rights.

106.    DEFENDANTS' willful failure to pay PLAINTIFFS the wages due and owing each of them constitutes violations of Labor Code §§ 201, 202, and 203.  Therefore, PLAINTIFFS are each entitled to penalties, attorneys' fees, and costs incurred in this action.

WHEREFORE, PLAINTIFF and the CLASS seek to request relief as described below.

**FIFTH CAUSE OF ACTION**
**FAILURE TO FURNISH ITEMIZED STATEMENTS**
**(CALIFORNIA LABOR CODE §226, 246(i))**
**(AGAINST ALL DEFENDANTS)**

107.    PLAINTIFFS repeat and re-allege all allegations contained in preceding paragraphs as though fully set forth in this cause of action, and incorporate them by reference, and further allege:

///

108.    Labor Code § 226(a) requires employers to maintain accurate records for each employee's hours of work and to provide each employee with an accurate wage statements in writing setting forth, among other things: gross wages earned; total hours worked by the employee; net wages earned; all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee, and all deductions made.

109.    Throughout THE RELEVANT TIME PERIOD, DEFENDANTS intentionally failed to furnish PLAINTIFF and the CLASS itemized wages statements upon each payment of wages *accurately* showing deductions made, gross wages, and net wages earned during each pay period.

110.    Such wage statements were incorrect because the wage statements do not accurately reflect the following: (i) the gross wages earned following the inclusion of the "Additional Taxable Compensation" as a result of the charges for the UNIFORMS; (ii) the net wages earned; (iii) the actual amount of deductions of wages caused by the inclusion of the "Additional Taxable Other Compensation" for the UNIFORMS.

111.    In addition, Labor Code § 246(i) requires an employer to provide an employee with written notice that sets forth the amount of paid sick leave available, or PTO leave an employer provides in lieu of sick leave, for use on either the employee's itemized wage statement described in Section 226 or in a separate writing provided on the designated pay date with the employee's payment of wages.

112.    DEFENDANTS not only failed to comply with the accrual rate specified in section 246(a), but also, failed to comply with the written notice requirements of 246(i).  The PLAINTIFFS itemized wage statements contain blank sections under "Paid Time Off" …. "Balance" ….. "ESPP Period" … and "Balance."    No reference is made to the amount of sick leave available on PLAINTIFFS' wage statements.

113.    DEFENDANTS willfully failed to comply with the notice requirements and fail to provide the PLAINTIFF and the CLASS with a separate writing on the designated pay date to set forth the amount of paid sick leave available.

114.    PLAINTIFF and the CLASS have suffered an "injury" within the meaning of the Labor Code §226(e) as a result of the DEFENDANTS failure to provide a complete and accurate

23

**CLASS AND REPRESENTATIVE ACTION**

wage statements containing all the delineated categories of information required by Labor Code § 226(a) because the PLAINTIFF and the CLASS cannot "promptly and easily determine" from the wage statement alone information required by Labor Code § 226(a).

115.    In failing to comply with the requirements of section 226(a) and 246(i), DEFENDANTS acted maliciously, oppressively, and despicably, with the wrongful intention of causing injury and hardship to PLAINTIFF and the CLASS by reaping economic gain at PLAINTIFFS expense, in willful and conscious disregard of PLAINTIFFS' statutory and regulatory rights.

116.    Cal. Lab. Code §226(b) provides in relevant part that: "[a]ny employee suffering injury as a result of any knowing and intentional failure by an employer to comply with subdivision (a) shall be entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000) and shall be entitled to an award of costs and reasonable attorney's fees." PLAINTIFFS are entitled to an award of costs and reasonable attorney's fees pursuant to California Labor Code section 226(e).

117.    Cal. Lab. Code §226.3 states in relevant part that "[a]ny employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in subdivision (a) of Section 226. The civil penalties provided for in this section are in addition to any other penalty provided by law."  PLAINTIFF and the CLASS are entitled to amounts provided herein plus costs and attorney's fees.

118.    WHEREFORE, PLAINTIFF and the CLASS seek to request relief as described below.

///

///

**CLASS AND REPRESENTATIVE ACTION**

**SIXTH CAUSE OF ACTION**
**FAILURE TO PROVIDE PAID SICK DAYS**
**(LABOR CODE §§ 245.5 -249)**
**(AGAINST ALL DEFENDANTS)**

119.    PLAINTIFFS repeat and re-allege all allegations contained in preceding paragraphs as though fully set forth in this cause of action, and incorporate them by reference, and further allege:

120.    California Labor Code sections 245.5, 246, 246.5, 247, 247.5, 248.5, and 249 provide employees who have worked in California for 30 or more days from the commencement of employment with paid sick days, to be accrued at least one hour for every 30 hours worked. Pursuant to California Labor Code section 246(b)(4), employers must provide no less than 24 hours or three (3) days of paid sick leave (or equivalent paid leave or paid time off) in each year of the employee's employment.

121.    Upon information and belief, DEFENDANTS systematically failed to provide PLAINTIFF and CLASS paid sick leave of no less than 24 hours or three (3) days. PLAINTIFF and CLASS worked in excess of 30 days for DEFENDANTS in California and were therefore eligible to receive paid sick leave.

122.    Additionally, DEFENDANTS failed to correctly list the balance of paid sick leave (or paid time off) benefits available on the PLAINTIFFS' wage statements as required by Labor Code § 246(i).

123.    DEFENDANTS' ongoing and systematic failure to provide the requisite sick leave benefits to PLAINTIFFS and failure to provide them with accurate balances of their benefits available, violates California Labor Code section 246.  PLAINTIFF and the CLASS are therefore entitled to recover civil penalties pursuant to Labor Code sections 248.5.

124.    WHEREFORE, PLAINTIFF and the CLASS seek to request relief as described below.

///

///

///

**CLASS AND REPRESENTATIVE ACTION**

### SEVENTH CAUSE OF ACTION
### FAILURE TO MAINTAIN RECORDS IN VIOLATION OF
### (LABOR CODE §§ 558, 1174, 1174.5, 274.5(a))
### (AGAINST ALL DEFENDANTS)

125.     PLAINTIFFS repeat and re-allege all allegations contained in preceding paragraphs as though fully set forth in this cause of action, and incorporate them by reference, and further allege:

126.     Labor Code section 1174(d) requires DEFENDANTS to maintain and preserve in a central location in **the state** or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by, and the wages paid to employees employed at the respective plants or establishments. These records shall be kept on file for not less than three years.

127.     DEFENDANTS engaged in a policy and practice of maintaining payroll records, and records pertaining to current and former employees outside of "the state."

128.     When PLAINTIFF and the CLASS request their most recent payroll records, they are directed to order them through NIKE's Human Resources, which would in turn mail the requesting employee's payroll records in an envelope clearly reflecting postal stamp "mailed from zip code 97005, Beaverton, OR."

129.     DEFENDANTS failed to comply with California Labor Code section 1174. DEFENDANTS' failure to comply with California Labor Code section 1174 is a violation or California Labor Code section 1175.

130.     Labor Code Labor Code § 1174.5 provides that any person employing labor who willfully fails to maintain the records required by Labor Code § 1174(d), shall be subject to civil penalty in the amount of $500.00.

131.     Labor Code § 558 provides for a civil penalty to be assessed against any employer or other person acting on behalf of an employer who violates, or causes to be violated, a provision of the California Labor Code regulating wages, hours, and working conditions.

132.     PLAINTIFFS are informed and believe, and on that basis allege that DEFENDANTS, at all relevant time herein, were PLAINTIFFS' employers or acting on behalf of

1   PLAINTIFFS' employers pursuant to Labor Code § 558 for purposes of the Labor Code violations

2   alleged in this cause of action, and are therefore subject to civil penalties.

3        133.   As a direct and proximate result of the willful conduct of DEFENDANTS, in

4   violation of Labor Code § 558, 1174(d), PLAINTIFFS are entitled to an award of civil penalties in

5   the amount of $500 pursuant to Labor code §1174.5.

6        134.   Furthermore, Labor Code Labor Code § 247.5(a) requires an employer to keep for at

7   least three yeas records documenting the hours worked and paid sick days accrued and used by an

8   employee.  An employer shall make these records available to an employee in the same manner as

9   described in Section 226.

10       135.   Upon information and belief, DEFENDANTS also fail to comply with section

11  247.5(a) in the same manner as DEFENDANTS' fail to provide PLAINTIFFS with the records

12  reflecting accrued and used paid sick days.

13       136.   PLAINTIFFS and the CLASS are entitled to and seek injunctive relief requiring

14  DEFENDANTS to comply with Labor Code Sections 226, and 1174, among other provisions.

15  PLAINTIFFS and the CLASS are also entitled to and seek actual and statutory damages available

16  for such violations under Labor Code Sections 226, and 1174.5, as well as interest, costs, penalties,

17  and attorneys' fees.

18       137.   WHEREFORE, PLAINTIFF and the CLASS seek to request relief as described

19  below.

**EIGHTH CAUSE OF ACTION**
**FAILURE TO PROVIDE SEATS**
**(LABOR CODE §1198, AND IWC Order No. 7, SEC. 14)**
**(AGAINST ALL DEFENDANTS)**

20

21

22       138.   PLAINTIFFS repeat and re-allege all allegations contained in preceding paragraphs

23  as though fully set forth in this cause of action, and incorporate them by reference, and further

24  allege:

25       139.   California Labor Code section 1198 makes it illegal to employ an employee under

26  conditions of labor that are prohibited by the applicable wage order.  By failing to provide

27  PLAINTIFF and the CLASS with seats, in violation of IWC Wage Order 7-2001, section 14,

28

27

**CLASS AND REPRESENTATIVE ACTION**

1   DEFENDANTS violated Lab. Code section 1198.

2   140.    PAGA permits an "aggrieved employee" to recover penalties on behalf of himself or

3   herself and other current and former employees as a result of the employer's violations of certain

4   sections of the California Labor Code.  PLAINTIFF is an aggrieved employee, in that PLAINTIFF

5   was employed by DEFENDANTS and was not provided with a seat, in violation of Lab. Code

6   section 1198 and Wage Order 7-2001, section 14.

7   141.    A violation of Lab. Code section 1198 gives rise to private right of action under

8   PAGA.  *Home Depot v. Superior Ct.*, 191 Cal.App.4th 210 (2011), wherein aggrieved employees

9   obtained Court of Appeal rulings that California workers have private right of action for civil

10  penalties against employers who violate minimum labor conditions standards guaranteed by IWC

11  Wage Orders.  *Id.  See also*, *Bright v. 994 Stores*, 189 Cal.App.4th 1472 (2010.)

12  142.    PLAINTIFF and the CLASS are entitled to penalties against DEFENDANTS as

13  provided under Lab. Code section 2699(f), plus reasonable attorneys' fees and costs, in amounts to

14  be proved at trial.

15  143.    WHEREFORE, PLAINTIFF and the CLASS seek to request relief as described

16  below.

### NINTH CAUSE OF ACTION
### FAILURE TO FURNISH SAFE AND HEALTHFUL EMPLOYMENT AND PLACE OF EMPLOYMENT
### (LABOR CODE §§ 6400, 6401, 6306, 6403, 6407)
### (AGAINST ALL DEFENDANTS)

20  144.    PLAINTIFFS repeat and re-allege all allegations contained in preceding paragraphs

21  as though fully set forth in this cause of action, and incorporate them by reference, and further

22  allege:

23  145.    Labor Code §6400(a) requires that every employer shall furnish employment and a

24  place of employment that is safe and healthful for the employees therein.

25  146.    Labor Code §6401 requires every employer to adopt and use safeguards, practices,

26  means, methods, operations, and processes which are reasonably adequate to render such

27  employment and place of employment safe and healthful.  Every employer shall do every other

28  thing reasonably necessary to protect the life, safety, and health of employees.

147.    Labor Code §6306(a) defines "Safe," "safety," and "health" as applied to an employment or a place of employment to mean such freedom from danger to the life, safety, or health of employees as the nature of the employment reasonably permits.

148.    Labor Code §6306 (b) states that "Safety device" and "safeguard" shall be given a broad interpretation so as to include any practicable method of mitigating or preventing a specific danger.

149.    Labor Code §6403(b) specifically states that no employer shall fail or neglect to adopt and use methods and processes reasonably adequate to render the employment and place of employment safe.

150.    Labor Code §6403(c) of the Code also requires that employers to do every other thing reasonable necessary to protect the life, safety, and health of employees.

151.    Labor Code §6407 imposes a mandatory compliance with the Occupational Safety and Health Standards, and "all applicable rules, regulations and orders pursuant to this division."

152.    A reasonable and adequate practice to render employment safe requires all DEFENDANTS' retail stores in California to adopt a safe and healthful practice by assigning each PLAINTIFF their own earphones.  DEFENDANTS, however, failed and neglected and continue to fail and neglect to adopt this reasonable process and practice to protect the health, and safety of their employees.

153.    Similar to the specific requirements relating to Personal Protective Equipment clearly specified in Title 8 California Code of Regulations § 3380, 29 Code of Federal Regulation §1910.132(a), and CCR §3387 to be *maintained in a sanitary condition* and prohibiting their interchange among employees, earphones should not be interchanged among employees. Earphones that clearly come into contact with EMPLOYEES' skin carries far more health risk than protective clothing which CCR §3387 prohibits employees from interchanging, and only under a limited circumstances said section allows employees to interchange clothing or devices, only if worn over shoes or outer clothing where no part of which contacts the skin of the wearer.

**CLASS AND REPRESENTATIVE ACTION**

154.    Various other sections expressly prohibit the very same biological hazards transmitted through the use of common earphones, such as the prohibition against common use of "other vessels" and "common utensils." (CCR §3363 (e); CFR 1910.141(b)(1)(vi))[5].

155.    When several regulations prohibit  the same conduct (e.g. "common use" … "interchanging" … "contact with skin") that results in transmitting and spreading of biological hazards, it clearly reflects legislative intent of protecting employees from such hazards and the necessity of taking steps to avoid such hazards transmitted through interchange and/or common use.

156.    No proper cleaning, or disinfecting is being undertaken by DEFENDANTS to maintain the earphones in a sanitary and healthful condition to eliminate the biological hazards associated with "common use" among DEFENDANTS' employees.   In gross and reckless disregard to the health and safety of PLAINTIFFS, DEFENDANTS do not "do every other thing reasonable necessary to protect the life, safety, and health of [PLAINTIFFS]."

157.    By subjecting PLAINTIFF and the CLASS to an environment in which their safety was directly compromised by compelling them to carry walkie-talkies and share the wireless earphones used with the walkie-talkies, DEFENDANTS failed to furnish employment and a place of employment that is safe and healthful for the employees therein.

158.    DEFENDANTS policy and practice of failing to implement or maintain procedures for healthful and safe use of the earphones associated with the Walkie-talkies, subjected and continue to subject PLAINTIFFS to an environment in which their health and safety is directly compromised.

159.    As a direct and proximate result of the acts of DEFENDANTS, PLAINTIFF and the CLASS has suffered and will continue to suffer harm as a result of such conduct.

---

[5] CCR §3363 (e), "The common use of a cup, glass or other vessel for drinking purposes is prohibited."  CFR 1910.141(b)(1)(vi), "A common drinking cup and other common utensils are prohibited."

**CLASS AND REPRESENTATIVE ACTION**

160.    As a further direct and proximate result of the oppressive and despicable acts of DEFENDANTS, as described herein, PLAINTIFFS were not provided the freedom from danger to their lives, safety, or health, and therefore, PLAINTIFFS necessarily incurred attorneys' fees and costs of this suit to protect themselves from such danger.

161.    DEFENDANTS' acts were committed and continue to be committed with malice, and constitute despicable conduct that is carried on by DEFENDANTS with a willful and conscious disregard of the right of their employees to safe and healthful employment and place of employment.

162.    DEFENDANTS' earphone devices are in dangerous condition so as to constitute an imminent hazard to PLAINTIFFS.    Therefore, their continued use shall be prohibited and a conspicuous notice to that effect shall be attached on the earphones rack at each of DEFENDANTS retail stores. (Labor Code § 6325)

163.    California Labor Code §6423, §6427, § 6428, and §6429 provide civil penalties against an employer that commits violations of the Occupational Safety and Health Act.  Pursuant to Labor Code § 6428 civil penalties of up to $ 25,000.00 maybe assessed against "any employer who violates any occupational safety or health standard, order, or special order" when the violation is serious. Pursuant to Labor Code § 6428 civil penalties of up to $ 7,000.00  maybe assessed against "any employer who violates any occupational safety or health standard, order, or special order" when the violation is specifically determined not to be of a serious nature.

164.    PLAINTIFF has complied with the Notice requirements as set forth in paragraph 66 of this Complaint regarding the violations of the Labor Code alleged in this cause of action prior to commencing this action.    PLAINTIFF therefore has a private right of action against DEFENDANTS, for penalties under labor code § 2698-2699.5.

WHEREFORE, PLAINTIFF and the CLASS seek to request relief as described below.

///

///

///

///

**CLASS AND REPRESENTATIVE ACTION**

**TENTH CAUSE OF ACTION**
**FAILURE TO PAY MINIMUM WAGE**
**(LABOR CODE §§ 1197, 1194, 1194.2, 1197.1)**
**(AGAINST ALL DEFENDANTS)**

165.    PLAINTIFFS repeat and re-allege all allegations contained in preceding paragraphs as though fully set forth in this cause of action, and incorporate them by reference, and further allege:

166.    Cal. Lab. Code §1197 provides that: "the minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful."

167.    Cal. Lab. Code §1194 provides in relevant part that any employee receiving less than the legal minimum wage applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage, including interest thereon, reasonable attorneys' fees, and costs of suit.

168.    Cal. Lab. Code §1194.2 provides in relevant part that: "in any action under ... Section 1194 to recover wages because of a payment of wage less than the minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wage unlawfully unpaid and interest thereon."

169.    California Code of Regulation title 8, §11070(4)(A) provides that employers must pay all employees not less than the lawful minimum wage for all hours worked.

170.    DEFENDANTS' business is part of the "Mercantile Industry" within the meaning of California Code of Regulation title 8, §11070(2)(H).

171.    PLAINTIFF and the CLASS are non-exempt employees within the meaning of Cal. Code of Regulations tit. 8, §11070.

172.    As alleged herein, DEFENDANTS required PLAINTIFF and the CLASS to purchase and maintain DEFENDANTS' UNIFORMS and to wear such UNIFORMS while at work as a condition of employment. After deducting the taxes from the wages of the PLAINTIFF and the CLASS for the applicable work week, DEFENDANTS failed to pay PLAINTIFF and the CLASS

32

**CLASS AND REPRESENTATIVE ACTION**

appropriate minimum wages.  By these actions, DEFENDANTS violated Cal. Lab. Code §1197 and are liable to PLAINTIFF and the CLASS.

173.    As a result of the unlawful acts of DEFENDANTS, PLAINTIFF and the CLASS have been deprived of compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, including interest thereon, attorneys' fees, costs, liquidated damages, and any other damages as set forth under California law, including statutory and civil penalties under Cal. Labor Code §2699.

174.    WHEREFORE, PLAINTIFF and the CLASS seek to request relief as described below.

**ELEVENTH CAUSE OF ACTION**
**COERCION**
**LABOR CODE § 450**
**(AGAINST ALL DEFENDANTS)**

175.    Cal. Lab. Code §450(a) provides in relevant part that: "No employer, or agent or officer thereof, or other person, may compel or coerce any employee to patronize his or her employer, or any other person, in the purchase of any thing of value."

176.    As alleged herein, DEFENDANTS required PLAINTIFF and the class to purchase DEFENDANTS' clothing, as a condition of employment.

177.    By their actions herein, DEFENDANTS violated Section 450 of the California Labor Code.

178.    As a result of the unlawful acts of DEFENDANTS, PLAINTIFF and the CLASS have incurred wage losses in amounts to be determined at trial, and are entitled to recovery of such amounts, including interest therein, attorney's fees, costs, and any other damages set forth under California law, including statutory penalties under Cal. Labor Code §2699.

179.    WHEREFORE, PLAINTIFF and the CLASS seek to request relief as described below.

///

///

///

**CLASS AND REPRESENTATIVE ACTION**

**TWELFTH CAUSE OF ACTION**
**INJUNCTIVE RELIEF**
**(AGAINST ALL DEFENDANTS)**

180.   PLAINTIFFS repeat and re-allege all allegations contained in preceding paragraphs as though fully set forth in this cause of action, and incorporate them by reference, and further allege:

181.   DEFENDANTS unlawful conduct of continuing to tax PLAINTIFFS' wages without proper reimbursement for the value of the UNIFORMS, failing to furnish employment and a place of employment that is not safe and healthful for employees, coercing PLAINTIFFS to agree to patronize DEFENDANTS and to illegal employment terms and conditions, failing to provide PLAINTIFFS paid sick leave, and failing to provide PLAINTIFFS with suitable seating in violation of California Labor Code and IWC Orders, threatens real and immediate harm to PLAINTIFFS, who will suffer irreparable harm.

182.   PLAINTIFFS are therefore entitled to an order restraining and ordering DEFENDANTS, representatives, attorneys, servants, and agents from further harm pending final judgment on this matter.

**THIRTEENTH CAUSE OF ACTION**
**FOR PENALTIES, PURSUANT TO LABOR CODE § 2699(f) FOR VIOLATIONS OF LABOR CODE §§ 201-203, 221, 224, 226, 245.5-249, 450, 432.5, 1174, 1194, 1197, 1198, 1197.1, 2802, 6400, 6401, 6403, 6407, 6306**
**(AGAINST ALL DEFENDANTS)**

183.   PLAINTIFFS repeat and re-allege all allegations contained in preceding paragraphs as though fully set forth in this cause of action, and incorporate them by reference, and further allege:

184.   Cal. Labor Code § 2698 et seq., the Labor Code Private Attorney General Act of 2004 expressly establishes that any provision of the Cal. Labor Code which provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency, or any of its departments, divisions, commissions, boards agencies or employees for a violation of the Cal. Labor Code, may be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself, and collectively on behalf of all other current or former employees.

///

**CLASS AND REPRESENTATIVE ACTION**

185.    Whenever the Labor and Workforce Development Agency, or any of its departments, divisions, commissions, boards, agencies, or employees has discretion to assess a civil penalty, a court in a civil action is authorized to exercise the same discretion, subject to the same limitation and conditions, to assess a civil penalty.

186.    PLAINTIFF, and the CLASS, all non-exempt employees of DEFENDANTS are "aggrieved employees" as defined by Cal. Labor Code § 2699 in that they are all current and former employees of DEFENDANTS, and one or more of the alleged violations was committed against them.

187.    Having complied with the Notice and administrative provisions of PAGA, PLAINTIFF holds a right to bring an action on behalf of himself and other employees acting as a proxy of the LWDA.

188.    Pursuant to Labor Code § 2699 et seq., PLAINTIFF seeks to recover civil penalties for which DEFENDANTS are liable as a result of violations of the Labor Code, as set forth in this Complaint and the Labor Code Private Attorney General Notice attached hereto as Exhibit 2 and incorporated by reference including, but not limited to, violations of labor code §§ 201-203, 221, 224, 226, 245.5-249, 450, 432.5, 1174, 1194, 1197, 1198, 1197.1, 2802, 6400, 6401, 6403, 6407, and 6306.

189.    As a result of the violations alleged herein, PLAINTIFF, individually and on behalf of all aggrieved employees in their capacity as private attorneys general seeks penalties under Labor Code § 2699(f), which states in relevant part:

> For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions as follows: … (2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100.00) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200.00) for each aggrieved employee per pay period for each subsequent violation.

190.    To the extent that any violation alleged herein does not carry penalties under Cal. Labor Code § 2699(a), PLAINTIFF seeks civil penalties pursuant to Cal. Lab. Code § 2699(f) for PLAINTIFF and each member of the CLASS for each pay period in which they were aggrieved, in the amounts established by Cal. Lab. Code § 2699(f).

**CLASS AND REPRESENTATIVE ACTION**

191.    For each such violations, PLAINTIFF and all other aggrieved employees are entitled to penalties in an amount to be shown at the time of trial.  The penalties will be allocated 75% to LWDA, and 25% to the CLASS, (i.e. affected employees.)

192.    Pursuant to Cal. Labor Code §§2699(g)(1) PLAINTIFFS are entitled to seek and recover reasonable attorneys' fees and costs.

193.    PLAINTIFF, on behalf of himself and the CLASS, requests relief through PAGA as described herein and below.

## FOURTEENTH CAUSE OF ACTION
### UNFAIR COMPETITION, CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 ET, SEQ.
### (AGAINST ALL DEFENDANTS)

194.    PLAINTIFFS repeat and re-allege all allegations contained in preceding paragraphs as though fully set forth in this cause of action, and incorporate them by reference, and further allege:

195.    This is a Representative Private Attorney General Action and Class Action for Unfair Business Practices.  PLAINTIFF, on his own behalf and on behalf of the general public, and on behalf of others similarly situated, brings this claim pursuant to Business & Professions Code § 17200 *et seq.*  The conduct of the DEFENDANTS as alleged in this Complaint has been and continues to be unfair, unlawful and harmful to PLAINTIFF, the general public, and members of the CLASS.  PLAINTIFF seeks to enforce important rights affecting the public interest within the meaning of the Code of Civil Procedure § 1021.5.

196.    PLAINTIFF is a "person" within the meaning of Business and Professions Code § 17204, and therefore has a standing to bring this cause of action for injunctive relief, restitution, and other appropriate equitable relief.

197.    By and through the conduct described in this Complaint, PLAINTIFF, and the CLASS, and all persons similarly situated have been deprived and injured.

198.    By and through their unfair, unlawful and/or fraudulent business practices described herein, DEFENDANTS have obtained valuable property, money, and services from PLAINTIFF and the CLASS, and all persons similarly situated, and have deprived PLAINTIFF and members of

36

**CLASS AND REPRESENTATIVE ACTION**

1    the CLASS, and all persons similarly situated of valuable rights and benefits guaranteed by law, all

2    to their detriment.

3        199.    Wage and hour laws express fundamental public policies.   Properly providing

4    employees with all wages earned is a fundamental public policy of this State and of the United

5    States.   Labor Code § 90.5(a) articulates the public policy of this State to enforce vigorously

6    minimum labor standards, to ensure that employees are not required or permitted to work under

7    substandard and unlawful conditions, and to protect-law-abiding employers and his employees

8    from competitors who lower their cots by failing to comply with minimum labor standards.

9        200.    Business & Professions Code § 17200 et seq. prohibits unlawful and unfair business

10    practices.   DEFENDANTS' conduct, as alleged in this Complaint, including but not limited to not

11    failing to pay LAINTIFFS the mandated minimum wage, and all wages earned and due; failing to

12    indemnify PLAINTIFFS for expenditures in discharge of their duties; failing to properly maintain

13    records; failing to provide accurate itemized wage statements for each pay period; failing to pay

14    each former employee any of the wages due and owing; failing to furnish employment and a place

15    of employment that is safe and healthful for employees; requiring employees and applicants to

16    agree to illegal employment terms and conditions; failing to provide employees paid sick leave; and

17    failing to provide employees with suitable seating, constitute unfair competition in violation of §

18    17200 et seq. of the Business & Professions Code.

19        201.    DEFENDANTS have violated statutes and public policies.   Through the conduct

20    alleged in this Complaint, DEFENDANTS have acted contrary to the public policies, have violated

21    specific provisions of the Labor Code, and have engaged in other unlawful and unfair business

22    practices in violation of Business & Professions Code § 17200, et seq. depriving PLAINTIFF, and

23    all persons similarly situated, and all interested persons of rights, benefits, and privileges

24    guaranteed to all employees under the law.

25        202.    In addition are immoral, unethical, oppressive, fraudulent and unscrupulous, and

26    thereby constitute unfair, unlawful and/or fraudulent business practices in violation of California

27    Business and Professions Code sections 17200, *et seq.*

28    ///

**CLASS AND REPRESENTATIVE ACTION**

203. DEFENDANTS, by engaging in the conduct alleged, either knew or in the exercise of reasonable care should have known that the conduct was unlawful. As such, it is a violation of § 17200 et seq. of the Business and Professions Code.

204. As a proximate result of the above-mentioned acts of DEFENDANTS, PLAINTIFF and others similarly situated employees have been damaged in a sum as may be proven at trial.

205. Unless restrained by this Court, DEFENDANTS will continue to engage in the unlawful conduct as allege above. Pursuant to Business & Professions Code § 17200 et seq., this Court should make such order or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment, by DEFENDANTS, its agents, or employees, of any unlawful or deceptive practice prohibited by the Business & Professions Code, and/or including but not limited to, disgorgement of profits which may be necessary to restore PLAINTIFF and members of the CLASS the money DEFENDANTS have unlawfully failed to pay.

206. PLAINTIFF and CLASS, and all persons in interest, are entitled to, and do seek such relief as may be necessary to disgorge the profits which DEFENDANTS have acquired, or of which PLAINTIFF and the CLASS have been deprived, by means of the above described unfair, unlawful and/or fraudulent business practices.

207. PLAINTIFF and the CLASS are further entitled to and do seek a declaration that the above described business practices are unfair, unlawful and/or fraudulent, and injunctive relief restraining DEFENDANTS, and each of them, from engaging in any of the above described unfair, unlawful and/or fraudulent business practices in the future.

208. PLAINTIFF and CLASS have no plain, speedy, and/or adequate remedy at law to redress the injuries they suffered as a consequence of DEFENDANTS' unfair, unlawful and/or fraudulent business practices. As a result of the unfair, unlawful and/or fraudulent, business practices described previously, PLAINTIFF and the CLASS suffered and will continue to suffer irreparable harm unless DEFENDANTS, and each of them, are restrained from continuing to engage in said unfair, unlawful and/or fraudulent business practices.

209. PLAINTIFF and the CLASS also request an order that DEFENDANTS disgorge any profits arising from acts of unfair competition.

**CLASS AND REPRESENTATIVE ACTION**

210.    For the four (4) years preceding the filing of this action, as a result of DEFENDANTS' unfair business practices, PLAINTIFF and the CLASS have incurred damages, and request damages and/or restitution of all monies and profits to be disgorged from DEFENDANTS in an amount according to proof at time of trial.

### DEMAND FOR JURY TRIAL

PLAINTIFF, on behalf of himself and the CLASS, demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

PLAINTIFF, on behalf of himself and the CLASS, and all others similarly situated, prays for relief and judgment against DEFENDANTS, jointly and severally, as follows:

1. For an Order certifying the proposed CLASS and/or any other appropriate subclasses under CCP § 382;

2. For an Order appointing PLAINTIFF as the representative of the CLASS;

3. For an Order appointing counsel for PLAINTIFF as counsel for the CLASS;

4. For a finding that NIKE violated the provisions of the California Labor Code, including but not limited to, §§ 201-203, 221, 224, 226, 245.5-249, 450, 432.5, 1174, 1194, 1197, 1198, 2802, 6400, 6401, 6403, and 6407 as to PLAINTIFF and the CLASS;

5. That the Court declare, adjudge, and decree that NIKE violated California Business and Professions Code §§ 17200 et seq. as alleged herein;

6. For all other Orders, findings, and determinations identified and sought in this Complaint and/or the Court finds just and proper;

7. That the Court make an award to PLAINTIFF and the CLASS of damages for the amount of unpaid wages, including interest thereon and penalties, in amounts to be proven, in a formulaic manner, at trial;

8. For all wages earned and owing, including an amount sufficient to recover unlawfully deducted and unpaid wages;

///

9.  For an appropriate injunctive relief, including an Order for DEFENDANTS to cease and desist from improperly deducting wages from PLAINTIFFS;

10. For penalties according to the schedule as laid out in PAGA: for any initial violation, one hundred ($100) dollars for each aggrieved employee per pay period; two hundred ($200) dollars for each aggrieved employee per pay period for any subsequent violation, and reasonable attorneys' fees and costs pursuant to California Labor Code § 2699;

11. For nominal damages;

12. For special damages, according to proof;

13. For general damages in an amount according to proof;

14. For liquidated damages pursuant to California Labor Code §1194.2;

15. For reasonable attorneys' fees as provided by statute, including but not limited to California Code of Civil Procedures § 1021.5 and California Labor Code §§ 218.5, 222(e), 1194;

16. For pre-judgment and post-judgment interest as provided by law;

17. For actual, consequential, and incidental losses and damages in an amount according to proof;

18. For penalties as permitted under California Labor Code for violations of each of the sections identified herein, including but not limited to §§ 225.5, 247.5, 226, 226.3, 248.5, 1174.5, 1197.1, 558, 6423, 6427, 6428, and 6429;

19. For waiting time penalties according to proof pursuant to California Labor Code section 203 for all employees who have left DEFENDANTS' employment;

20. For injunctive relief pursuant to California Labor Code section 226(h);

21. For cost of suit herein;

22. For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from DEFENDANTS and determined to have been wrongfully acquired by DEFENDANTS as a result of violations of California Business & Professions Code sections 17200 et seq.;

**CLASS AND REPRESENTATIVE ACTION**

23. For any other such relief as the Court deems just and proper due to the misconduct committed by the DEFENDANTS as alleged in this Complaint.

24. 4. For disgorgement of all monies which DEFENDANTS have illegally gained;

25. For restitution of unpaid wages to PLAINTIFF and all the CLASS;

26. PLAINTIFF reserves the right to amend his prayer for relief.

Dated:  February 14, 2017          Respectfully submitted,


                                   LAW OFFICES OF NATALIE MIRZAYAN


                                   By: _____

                                       Natalie Mirzayan, Esq.
                                       Attorneys for Plaintiff OMRAN HAMID and the
                                       CLASS

**CLASS AND REPRESENTATIVE ACTION**

# **EXHIBIT 1**

# RETAIL NEW HIRE POLICY ACKNOWLEDGMENT FORM

## Electronic Communication Policy

By signing this form I agree that I have received a copy of and will comply with the policies and guidelines set forth in the Electronic Communications Policy.

## A Matter of Respect Policy

By signing this form, I acknowledge that I have received and read Nike Inc.'s A Matter of Respect policy and understand its terms. I agree to comply with all the terms of this policy. In particular, I also understand that harassment, discrimination, and other inappropriate behavior, as defined by this policy, is unacceptable and will not be tolerated -- which means that if I violate this policy, I will be subject to immediate corrective action, up to and including termination.

If I have any questions concerning this policy now or in the future, I understand that I should address them with my immediate supervisor, Divisional Human Resource Manager, or Employee Relations Specialist.

## Employee Policies/Handbook Acknowledgement

By signing this form, I acknowledged that I have been informed of the location of Nike, Inc.'s Employee Policies/Handbook on the company intranet (ZERO) or via the Internet at https://nikebenefits.ehr.com and I agree to comply with the policies and guidelines set forth by Nike.

Nike policies may, and likely will, be updated from time to time. The most current policies and guidelines published on the company intranet (ZERO) and on the Internet at https://nikebenefits.ehr.com shall supersede all prior policies and procedures.

I acknowledge that it is my responsibility to (and that I will) review the handbook and stay informed of the most current Nike policies and I agree to comply with them.

I understand that my employment with Nike is at will as it is not Nike's practice to enter into employment contracts, unless in writing and specifically approved by Nike's Chairman, President or Vice President. I understand that either I or Nike may end our employment relationship at any time.

## Retail Staff Package Agreement

It is my understanding that the total amount of my uniforms provided to me by Nike Inc. will be considered taxable wages on my paycheck. The total amount will be included in my gross wages and taxed at my current withholdings.

## Retail Conduct Standards

By signing this form, I acknowledge that I have read and understood the contents of the Retail Conduct Standards document and understand that Nike Inc. Retail employees are expected to understand and to adhere to all Retail Policies and Procedures. Any action that is determined to be detrimental to the best interest of Nike Inc. may result in corrective action, up to and including termination.

## Retail Attendance Expectations

By signing this form, I acknowledge that I have received and read the Retail Attendance Expectations. I understand that excessive tardiness, absenteeism, or a pattern of unacceptable attendance may result in corrective action up to and including termination.

_____        _____
EMPLOYEE NAME (Please Print)                             DATE


_____
EMPLOYEE SIGNATURE

  Hurley)( 

Confidential

Rev. 04-2015

# **EXHIBIT 2**

# Notification In Advance of a Civil Action

## Natalie Mirzayan

Wed 8/24/2016 10:20 AM

To: PAGAfilings@dir.ca.gov <PAGAfilings@dir.ca.gov>; DOSHSA@dir.ca.gov <DOSHSA@dir.ca.gov>;

Cc: mirzayanlaw@outlook.com <mirzayanlaw@outlook.com>;

Bcc: mirzayann@yahoo.com <mirzayann@yahoo.com>;

📎 1 attachments (411 KB)

Omran - PAGA Letter.pdf;

**Dear Sir or Madame:**

Please see the attached notification which is provided in advance of a civil action under Labor Code Private Attorneys General Act of 2004.

Thank you!

# LAW OFFICES OF NATALIE MIRZAYAN



August 24, 2016

<u>VIA E-MAIL</u>
Labor & Workforce Development Agency
PAGAfilings@dir.ca.gov
Attn:  PAGA Administrator
1515 Clay Street, Suite 801
Oakland, CA  94612

Richard Fazlollahi, District Manager
Santa Ana District Office
2000 E. McFadden Ave, Ste. # 122
Santa Ana, CA 92705
DOSHSA@dir.ca.gov

<u>VIA CERTIFIED MAIL</u>
Nike Retail Services, Inc.
1 Bowerman Drive
Beaverton, OR 97005

Re:      ***Notification Of Labor Code Private Attorney General Action, Labor Code 2698
et. seq. Against Nike Retail Services, Inc.***

Dear Sir or Madame:

This notification is provided in advance of a civil action under Labor Code Private
Attorneys General Act of 2004, ("PAGA").  This office represents Mr. Omran Hamid ("Mr.
Hamid") who is employed by Nike Retail Services, Inc. ("NIKE") at a retail store in Orange
County, San Clemente, California, since October 30, 2015.  NIKE's Orange County retail store is
located at 101 W. Avenida Vista Hermosa # 130, San Clemente, CA 92672.  This letter is a notice
and a request, pursuant to California Labor Code §2699.3 that your agency investigates the claims
in this impending civil action.  If the agency does not intend to investigate the alleged violations,
we specifically and respectfully request notification so that we can file our civil action to include
our PAGA claims.

August 24, 2016
Page 2

This action is brought on behalf Mr. Hamid and other similarly situated and aggrieved current and former employees at all California NIKE retail stores ("EMPLOYEES").  The impending action is to recover penalties for the following Labor Code Violations as detailed below:

**Labor Code §§ 221, 224, and §225.5:** Section §221 makes it unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee.  NIKE engages in a policy and practice that requires all EMPLOYEES to pay income taxation on 50% of the alleged retail value of Nike-Branded clothing ("UNIFORMS.")

EMPLOYEES at NIKE are required to accept and wear the UNIFORMS during working hours.  More specifically, NIKE artificially credits as compensation to each EMPLOYEES' wages an "Additional Taxable Other Compensation," allegedly for 50% of the retail value of the UNIFORMS.   This so called "Additional Taxable Other Compensation" for the alleged value of EMPLOYEES' UNIFORM subjects EMPLOYEES to a higher rate of income taxation based on each EMPLOYEES' election on their W4/CA DE-4 California Personal Income Tax (PIT) withholding.  All retail EMPLOYEES must accept the UNIFORMS 4 times a year.  Each quarter when the UNIFORMS are distributed, the value of the UNIFORMS is solely determined by NIKE.

Due to the EMPLOYEES' income being improperly inflated, EMPLOYEES' wages are reduced/deducted as a result of the additional taxation.  This unlawful deduction/reduction of wages occurs not only for each pay period in which the UNIFORMS were distributed and the 50% retail value were added as compensation to EMPLOYEES' wages, but also to all subsequent pay periods because of the increased "Year to Date Compensation."

NIKE's policy and practice of passing its cost of doing business and deducting from EMPLOYEES wages as taxation for UNIFORMS is not permitted under §224.  In fact, §225.5 of the Code provides penalties for any person that unlawfully withholds wages due any employee.

**Labor Code§ §1174, 226, and §226.3:** Labor Code requires employers to maintain accurate records for each employee's hours of work and to provide each employee with an accurate wage statements in writing setting forth, among other things: gross wages earned; total hours worked by the employee; net wages earned; all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee, and all deductions made.

In addition, Labor Code section 1174(d) requires an employer to keep, at a central location in *the state* or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by, and the wages paid to employees employed at the respective plants or establishments. These records shall be kept on file for not less than three years.   NIKE engages in a policy and practice of maintaining payroll records, and records pertaining to current and former EMPLOYEES outside of "the state."  When NIKE EMPLOYEES request their payroll records through Human Resources, NIKE would mail the requesting employee's payroll records in an envelope clearly reflecting postal stamp "mailed from zip code 97005, Beaverton, OR."

August 24, 2016
Page 3

NIKE engages in a policy and practice of willfully and intentionally failing to furnish its employees with accurate itemized wage statements in compliance with the statutory requirement of §226.  Instead, the wage statements NIKE provides to its employees fail to accurately state all gross wages earned for the following reasons: (1) EMPLOYEES are not paid (straight or overtime) for the time while they wait outside of NIKE's stores waiting for a manager to allow them into the store prior to clocking-in; (2) wages statements do not reflect hours of overtime actually worked and the corresponding pay rate; (3) wage statements do not reflect the exact amount of deduction/reduction of wages caused by the inclusion of the "Additional Taxable Other Compensation" for UNIFORMS; (4) wage statements also fail to include reimbursement for cellphone usage exclusively for NIKE's benefit to alert the store manager to allow EMPLOYEES into the store prior to start of EMPLOYEES shift; (5) net wages earned are also inaccurate as a result of the alleged "Additional Taxable Compensation" that inaccurately increased EMPLOYEES' gross income.  This so called "Additional Taxable Other Compensation" for the alleged value of EMPLOYEES' UNIFORM subjects EMPLOYEES to a higher rate of income taxation based on each EMPLOYEES' election on their W4/CA DE-4 California Personal Income Tax (PIT) withholding.  Due to the EMPLOYEES' income being improperly inflated, EMPLOYEES' wages are reduced/deducted as a result of the additional taxation.  This unlawful deduction/reduction of wages occurs not only for each pay period in which the UNIFORMS were distributed and the 50% retail value were added as compensation to EMPLOYEES' wages, but also to all subsequent pay periods because of the increased "Year to Date Compensation;" and finally, (6) NIKE failed to keep records of Employees' actual time worked.

**Labor Code § 450(a):** No employer may compel or coerce any employee, to patronize his or her employer, or any other person, in the purchase of anything of value.  NIKE engages in a policy and practice that requires all EMPLOYEES to patronize NIKE, and/or taxing authority for a value attributed to the "Additional Taxable Other Compensation" for the 50% of retail value of EMPLOYEES' UNIFORM.  The "value" paid for said UNIFORMS by EMPLOYEES is the reduction of wages caused by the increase in income taxation.  NIKE compels and coerces EMPLOYEES to accept and pay taxation for the UNIFORMS they are required to wear for NIKE's benefit during working hours.

**Labor Code §2800 and §2802:** NIKE engages in a policy and practice that requires EMPLOYEES to pay taxation on 50% of the retail value of UNIFORMS that EMPLOYEES are required to wear at work.  By engaging in this practice, NIKE fails to indemnify and reimburse its EMPLOYEES for all necessary expenditures incurred by them in direct consequences and discharge of their duties or their obedience to NIKE.  The UNIFORMS that NIKE requires EMPLOYEES to wear are necessary and are made a condition of their employment. EMPLOYEES are not allowed to wear any previously provided UNIFORMS by NIKE from previous quarters unless specifically authorized by NIKE only on designated days during the work week.  More specifically, since the UNIFORMS NIKE provides each quarter changes in colors/design, all EMPLOYEES must match their UNIFORMS for that current quarter and must wear the new sets provided by NIKE; previously provided UNIFORMS are not allowed.

August 24, 2016
Page 4

*See also*, **IWO 7, Uniforms 9(A):** When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer. The term "uniform" includes wearing apparel and accessories of distinctive design or color.

In addition, NIKE knows that all EMPLOYEES must first call, using their own personal cellphones, to appraise the manager within the store of their arrival so that the EMPLOYEES are allowed into the store and able to clock-in and work. Without use of personal cellphones, EMPLOYEES are not able to alert the manager on duty to unlock the door and allow them entry into the store. Furthermore, EMPLOYEES are then compelled to go to the breakroom and place their cellphones in the lockers provide by NIKE prior to the start of their shifts. NIKE prohibits EMPLOYEES from maintaining their cellphones in their possession during working hours and closely monitors EMPLOYEES using surveillance cameras. Since EMPLOYEES' phone use is exclusively limited for the employer's benefit, NIKE should reimburse EMPLOYEES for such use. In the alternative, if EMPLOYEES choose not to bring their cellphone to work, then EMPLOYEES would suffer prolonged wait time prior to entry into the store to be allowed to clock-in and begin work.

**Labor Code § 432.5** (Illegal Terms of Employment): The employer may not require any applicant or employee to agree to any illegal employment term or condition. NIKE is manipulating EMPLOYEES written consent and election on their W4/CA DE-4 California Personal Income Tax (PIT) withholding to unlawfully deduct wages attributed to the "Additional Taxable Other Compensation" for the alleged value of EMPLOYEES' UNIFORM. All retail EMPLOYEES must accept as a condition or term of employment the UNIFORMS 4 times a year. NIKE has misappropriated EMPLOYEES' W4/CA DE-4 Personal Income Tax Withholding, to a written consent to UNIFORMS deduction. Clearly this is an illegal term and condition of employment.

**Labor Code §§ 510 & 1198, 558 Payment for Overtime:** Labor Code requires employers to pay employees time and half (1.5) the employees' hourly rate for all hours worked in excess of eight hours per day and in excess of 40 hours per week; and double times the hourly rate for hours worked in excess of 12 hours per day, and eight hours on the seventh day worked in a week. NIKE engages in a policy and practice of suffering its non-exempt EMPLOYEES to work more than 8 hours in a day and/or forty hours in a work week by failing to compensate EMPLOYEES for reporting/waiting time at the beginning of their work schedule. In addition, EMPLOYEES must wait by the locked doors after clocking out for the manager to search their bags and persons, and for all other EMPLOYEES, at the time of store closing, since all EMPLOYEES must exit the store at the same time.

The waiting/reporting time is set by EMPLOYEES' schedule; however, upon arrival EMPLOYEES must wait outside by the locked doors for the manager to unlock the doors and allow EMPLOYEES to enter, clock-in, and begin work. NIKE knows that non-exempt EMPLOYEES must first call using their own personal cellphones to inform the manager who is in the store and appraise him/her of their arrival. This process takes several minutes per day. Despite this knowledge, NIKE fails to pay its non-exempt EMPLOYEES for overtime, double time, and

August 24, 2016
Page 5

straight time compensation for the hours they were suffered to wait prior to being allowed to work. If this unpaid wages for waiting time occurred during the first eight hours, then EMPLOYEES are entitled to straight time compensation. If the unpaid wages occurred after EMPLOYEES eight hours of work, then EMPLOYEES are entitled to time and half the regular rate of pay or double time for work in excess of 12 hours per day.

**Labor Code §§§ 1194, 1197, and 1197.1 Payment of Minimum Wages:** Labor Code requires payment of minimum wages for all hours worked. Labor Code sections 1194 and 1197 provide that it is unlawful to pay less than the minimum wage fixed by the Wage Orders. NIKE engages in a policy and practice of suffering its non-exempt EMPLOYEES to work for less than the minimum wage (1) by requiring all EMPLOYEES to pay for their UNIFORMS. The inclusion of 50% of the retail value of UNIFORMS in EMPLOYEES' wages as "Additional Taxable Other Compensation", subjects EMPLOYEES' to additional and improper income tax liability thereby causing their wages to fall below minimum wage. More specifically, this improper inclusion of the 50% retail value of UNIFORMS in EMPLOYEES' wages, reduces the EMPLOYEES' net pay and their average hourly rate falls below minimum wages for each pay period in which the UNIFORMS values were taxed; (2) EMPLOYEES' rate of pay falls below the minimum wage since employees are not paid reporting/waiting time until the manager allows EMPLOYEES into the store.

**Labor Code 246(a):** Labor Code 246(a) requires an employer to provide employees that work in California on or after July 1, 2015, for 30 or more days within a year from the commencement of employment, paid sick days to accrue at a rate of not less than one hour per every 30 hours worked or in the alternative must comply with the requirements of section 246(e)(2) or 246(b)(3).

Section 246(h) requires an employer to provide an employee with written notice that sets forth the amount of paid sick leave available, or PTO leave an employer provides in lieu of sick leave, for use on either the employee's itemized wage statement described in Section 226 or in a separate writing provided on the designated pay date with the employee's payment of wages.

NIKE fails to comply with the accrual rate specified in section 246(a) and also fails to comply with the written notice requirements of 246(h). NIKE EMPLOYEES' itemized wage statements contain blank sections under "Paid Time Off" …. "Balance" ….. "ESPP Period" … and "Balance." No reference is made to the amount of sick leave available on EMPLOYEES' wage statements. NIKE willfully fails to comply with the notice requirements and fails to provide EMPLOYEES with a separate writing on the designated pay date to set forth the amount of paid sick leave available.

**Labor Code § 247.5(a):** Labor Code requires an employer to keep for at least three yeas records documenting the hours worked and paid sick days accrued and used by an employee. An employer shall make these records available to an employee in the same manner as described in Section 226. NIKE also fails to comply with section 247.5(a) as it fails to provide an employee with the records reflecting accrued and used paid sick days and hours worked.

August 24, 2016
Page 6

**Labor Code §1198:** The Labor Code provides that labor conditions set by the Industrial Welfare Commission (Commission) shall be the standard labor conditions for employees.  A Commission wage order provides that employees shall be provided suitable seating, if reasonable, during the performance of their duties.  NIKE is in violation of Wage Order No. 7, subdivision 14 by failing to provide EMPLOYEES with suitable seating even though providing such seating is reasonable during the performance of their duties.

## CAL/OSHA VIOLATIONS:

**Labor Code §6400(a) and §6401:** Every employer shall furnish employment and a place of employment that is safe and healthful for the employees therein.   Labor Code requires every employer to adopt and use safeguards, practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe and healthful. Every employer shall do every other thing reasonably necessary to protect the life, safety, and health of employees.

**Labor Code §6306(a)** defines "Safe," "safety," and "health" as applied to an employment or a place of employment to mean such freedom from danger to the life, safety, or health of employees as the nature of the employment reasonably permits.  Labor Code §6306 (b) states that "Safety device" and "safeguard" shall be given a broad interpretation so as to include any practicable method of mitigating or preventing a specific danger.  *Id.*  In direct failure to comply with this Code, NIKE requires all of its retails EMPLOYEES in California to carry walkie-talkies and interchange the wireless earphones used with the walkie-talkies.  The Walkie-talkies and earphones are provided by NIKE and NIKE mandates that all EMPLOYEES carry the walkie-talkies and wear the earphone during working hours.  To reduce the cost of doing business, NIKE fails to assign EMPLOYEES with earphones to be worn exclusively by each EMPLOYEE; rather, NIKE compels EMPLOYEES to interchange/share the earphones among themselves. NIKE has designated an earphone rack wherein all EMPLOYEES must surrender their earphones, when departing the store, by placing each earphone on the designated rack.   This unsanitary and unhealthful practice results in each earphone being interchanged several times per day by EMPLOYEES following direct contact with each EMPLOYEES' ear.   This unhealthful and unsanitary practice, exposes EMPLOYEES to the risk of various infections, illnesses, and diseases which are transmitted based on close contact with the skin, ear wax, and body fluids (sweat), causing bacteria, and virus from each EMPLOYEES' ear that easily travel through the earphone to other EMPLOYEES.  NIKE's practice, is exactly the biological hazard, described in the *Informational Booklet on Industrial Hygiene, OSHA 3143-1998,* "Biological hazard, these include bacteria, viruses, fungi, and other living organisms that can cause acute and chronic infections by entering the body either directly or through breaks in the skin." The risk of infection caused by bacteria, viruses, fungi, and other living organisms that can cause acute and chronic infections by entering the body either directly or through breaks in the skin is seriously heightened if at least one of the EMPLOYEES sharing the earphone has bloody scabs around the ear.

August 24, 2016
Page 7


**Labor Code §6403(b) and §6407:** Labor Code §6403(b) specifically states that no employer shall fail or neglect to adopt and use methods and processes reasonably adequate to render the employment and place of employment safe; §6403(c) of the Code also requires that employers to do every other thing reasonable necessary to protect the life, safety, and health of employees. §6407 of the Labor Code imposes a mandatory compliance with the Occupational Safety and Health Standards, and "all applicable rules, regulations and orders pursuant to this division." A reasonable and adequate practice to render employment safe requires all NIKE retail locations to adopt a safe and healthful practice by assigning EMPLOYEES their own earphones. NIKE; however, failed and neglected to adopt this reasonable process and practice to protect the health, and safety of its EMPLOYEES. Similar to the specific requirements relating to Personal Protective Equipment clearly specified in Title 8 California Code of Regulations § 3380, 29 Code of Federal Regulation §1910.132(a), and CCR §3387 to be *maintained in a sanitary condition* and prohibiting their interchange among employees, earphones should not be interchanged among EMPLOYEES.

Earphones that clearly come into contact with EMPLOYEES' skin carries far more health risk than protective clothing which CCR §3387 prohibits employees from interchanging, and only under a limited circumstances said section allows employees to interchange clothing or devices, only if worn over shoes or outer clothing where no part of which contacts the skin of the wearer.


Various other sections expressly prohibit the very same biological hazards transmitted through the use of common earphones, such as the prohibition against common use of "other vessels" and "common utensils." (CCR §3363 (e); CFR 1910.141(b)(1)(vi))[1]. When several regulations prohibit "common use" … "interchanging" … "contact with skin" that results in transmitting and spreading of biological hazards, it reflects the importance of taking all necessary steps to avoid such hazards transmitted through interchange and/or common use.

No proper cleaning, or disinfecting is being undertaken by NIKE to maintain the earphones in a sanitary and healthful condition to eliminate the biological hazards associated with common use among its EMPLOYEES. In gross and reckless disregard to the health and safety of its EMPLOYEES, NIKE certainly does not "do every other thing reasonable necessary to protect the life, safety, and health of [EMPLOYEES]."


**Labor Code 6325:** Said earphone devices are in dangerous condition so as to constitute an imminent hazard to EMPLOYEES. Therefore, their continued use shall be prohibited and a conspicuous notice to that effect shall be attached on the earphones rack at each of NIKE's locations.


**Labor Code §6423, §6427, § 6428, and §6429:** California Labor Code §6423, §6427, § 6428, and §6429 provide civil penalties against an employer that commits violations of the Occupational Safety and Health Act.

---

[1] CCR §3363 (e), "The common use of a cup, glass or other vessel for drinking purposes is prohibited." CFR 1910.141(b)(1)(vi), "A common drinking cup and other common utensils are prohibited."

August 24, 2016
Page 8


The purpose of this letter is to satisfy the requirements created by California Labor Code section 2699 prior to seeking penalties allowed by law for the aforementioned violations. We look forward to determining whether the agency intends to take any action in reference to these violations.



Sincerely,

Natalie Mirzayan, Esq.

# LAW OFFICES OF NATALIE MIRZAYAN



August 24, 2016

VIA E-MAIL
Labor & Workforce Development Agency
PAGAfilings@dir.ca.gov
Attn:  PAGA Administrator
1515 Clay Street, Suite 801
Oakland, CA  94612

Richard Fazlollahi, District Manager
Santa Ana District Office
2000 E. McFadden Ave, Ste. # 122
Santa Ana, CA 92705
DOSHSA@dir.ca.gov

VIA CERTIFIED MAIL
Nike Retail Services, Inc.
1 Bowerman Drive
Beaverton, OR 97005

      Re:     ***Notification Of Labor Code Private Attorney General Action, Labor Code 2698 et. seq. Against Nike Retail Services, Inc.***

Dear Sir or Madame:

      This notification is provided in advance of a civil action under Labor Code Private Attorneys General Act of 2004, ("PAGA").  This office represents Mr. Omran Hamid ("Mr. Hamid") who is employed by Nike Retail Services, Inc. ("NIKE") at a retail store in Orange County, San Clemente, California, since October 30, 2015.  NIKE's Orange County retail store is located at 101 W. Avenida Vista Hermosa # 130, San Clemente, CA 92672.  This letter is a notice and a request, pursuant to California Labor Code §2699.3 that your agency investigates the claims in this impending civil action.  If the agency does not intend to investigate the alleged violations, we specifically and respectfully request notification so that we can file our civil action to include our PAGA claims.

---

August 24, 2016
Page 2

This action is brought on behalf Mr. Hamid and other similarly situated and aggrieved current and former employees at all California NIKE retail stores ("EMPLOYEES").  The impending action is to recover penalties for the following Labor Code Violations as detailed below:

**Labor Code §§ 221, 224, and §225.5:** Section §221 makes it unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee.  NIKE engages in a policy and practice that requires all EMPLOYEES to pay income taxation on 50% of the alleged retail value of Nike-Branded clothing ("UNIFORMS.")

EMPLOYEES at NIKE are required to accept and wear the UNIFORMS during working hours.  More specifically, NIKE artificially credits as compensation to each EMPLOYEES' wages an "Additional Taxable Other Compensation," allegedly for 50% of the retail value of the UNIFORMS.   This so called "Additional Taxable Other Compensation" for the alleged value of EMPLOYEES' UNIFORM subjects EMPLOYEES to a higher rate of income taxation based on each EMPLOYEES' election on their W4/CA DE-4 California Personal Income Tax (PIT) withholding.  All retail EMPLOYEES must accept the UNIFORMS 4 times a year.  Each quarter when the UNIFORMS are distributed, the value of the UNIFORMS is solely determined by NIKE.

Due to the EMPLOYEES' income being improperly inflated, EMPLOYEES' wages are reduced/deducted as a result of the additional taxation.  This unlawful deduction/reduction of wages occurs not only for each pay period in which the UNIFORMS were distributed and the 50% retail value were added as compensation to EMPLOYEES' wages, but also to all subsequent pay periods because of the increased "Year to Date Compensation."

NIKE's policy and practice of passing its cost of doing business and deducting from EMPLOYEES wages as taxation for UNIFORMS is not permitted under §224.  In fact, §225.5 of the Code provides penalties for any person that unlawfully withholds wages due any employee.

**Labor Code§ §1174, 226, and 226.3:** Labor Code requires employers to maintain accurate records for each employee's hours of work and to provide each employee with an accurate wage statements in writing setting forth, among other things: gross wages earned; total hours worked by the employee; net wages earned; all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee, and all deductions made.

In addition, Labor Code section 1174(d) requires an employer to keep, at a central location in ***the state*** or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by, and the wages paid to employees employed at the respective plants or establishments. These records shall be kept on file for not less than three years.   NIKE engages in a policy and practice of maintaining payroll records, and records pertaining to current and former EMPLOYEES outside of "the state."  When NIKE EMPLOYEES request their payroll records through Human Resources, NIKE would mail the requesting employee's payroll records in an envelope clearly reflecting postal stamp "mailed from zip code 97005, Beaverton, OR."

August 24, 2016
Page 3

NIKE engages in a policy and practice of willfully and intentionally failing to furnish its employees with accurate itemized wage statements in compliance with the statutory requirement of §226.  Instead, the wage statements NIKE provides to its employees fail to accurately state all gross wages earned for the following reasons: (1) EMPLOYEES are not paid (straight or overtime) for the time while they wait outside of NIKE's stores waiting for a manager to allow them into the store prior to clocking-in; (2) wages statements do not reflect hours of overtime actually worked and the corresponding pay rate; (3) wage statements do not reflect the exact amount of deduction/reduction of wages caused by the inclusion of the "Additional Taxable Other Compensation" for UNIFORMS; (4) wage statements also fail to include reimbursement for cellphone usage exclusively for NIKE's benefit to alert the store manager to allow EMPLOYEES into the store prior to start of EMPLOYEES shift; (5) net wages earned are also inaccurate as a result of the alleged "Additional Taxable Compensation" that inaccurately increased EMPLOYEES' gross income.  This so called "Additional Taxable Other Compensation" for the alleged value of EMPLOYEES' UNIFORM subjects EMPLOYEES to a higher rate of income taxation based on each EMPLOYEES' election on their W4/CA DE-4 California Personal Income Tax (PIT) withholding.  Due to the EMPLOYEES' income being improperly inflated, EMPLOYEES' wages are reduced/deducted as a result of the additional taxation.  This unlawful deduction/reduction of wages occurs not only for each pay period in which the UNIFORMS were distributed and the 50% retail value were added as compensation to EMPLOYEES' wages, but also to all subsequent pay periods because of the increased "Year to Date Compensation;" and finally, (6) NIKE failed to keep records of Employees' actual time worked.

**Labor Code § 450(a):** No employer may compel or coerce any employee, to patronize his or her employer, or any other person, in the purchase of anything of value.  NIKE engages in a policy and practice that requires all EMPLOYEES to patronize NIKE, and/or taxing authority for a value attributed to the "Additional Taxable Other Compensation" for the 50% of retail value of EMPLOYEES' UNIFORM.  The "value" paid for said UNIFORMS by EMPLOYEES is the reduction of wages caused by the increase in income taxation.  NIKE compels and coerces EMPLOYEES to accept and pay taxation for the UNIFORMS they are required to wear for NIKE's benefit during working hours.

**Labor Code §2800 and §2802:** NIKE engages in a policy and practice that requires EMPLOYEES to pay taxation on 50% of the retail value of UNIFORMS that EMPLOYEES are required to wear at work.  By engaging in this practice, NIKE fails to indemnify and reimburse its EMPLOYEES for all necessary expenditures incurred by them in direct consequences and discharge of their duties or their obedience to NIKE.  The UNIFORMS that NIKE requires EMPLOYEES to wear are necessary and are made a condition of their employment. EMPLOYEES are not allowed to wear any previously provided UNIFORMS by NIKE from previous quarters unless specifically authorized by NIKE only on designated days during the work week.  More specifically, since the UNIFORMS NIKE provides each quarter changes in colors/design, all EMPLOYEES must match their UNIFORMS for that current quarter and must wear the new sets provided by NIKE; previously provided UNIFORMS are not allowed.

August 24, 2016
Page 4


*See also*, **IWO 7, Uniforms 9(A):** When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer. The term "uniform" includes wearing apparel and accessories of distinctive design or color.

In addition, NIKE knows that all EMPLOYEES must first call, using their own personal cellphones, to appraise the manager within the store of their arrival so that the EMPLOYEES are allowed into the store and able to clock-in and work. Without use of personal cellphones, EMPLOYEES are not able to alert the manager on duty to unlock the door and allow them entry into the store. Furthermore, EMPLOYEES are then compelled to go to the breakroom and place their cellphones in the lockers provide by NIKE prior to the start of their shifts. NIKE prohibits EMPLOYEES from maintaining their cellphones in their possession during working hours and closely monitors EMPLOYEES using surveillance cameras. Since EMPLOYEES' phone use is exclusively limited for the employer's benefit, NIKE should reimburse EMPLOYEES for such use. In the alternative, if EMPLOYEES choose not to bring their cellphone to work, then EMPLOYEES would suffer prolonged wait time prior to entry into the store to be allowed to clock-in and begin work.

**Labor Code § 432.5** (Illegal Terms of Employment): The employer may not require any applicant or employee to agree to any illegal employment term or condition. NIKE is manipulating EMPLOYEES written consent and election on their W4/CA DE-4 California Personal Income Tax (PIT) withholding to unlawfully deduct wages attributed to the "Additional Taxable Other Compensation" for the alleged value of EMPLOYEES' UNIFORM. All retail EMPLOYEES must accept as a condition or term of employment the UNIFORMS 4 times a year. NIKE has misappropriated EMPLOYEES' W4/CA DE-4 Personal Income Tax Withholding, to a written consent to UNIFORMS deduction. Clearly this is an illegal term and condition of employment.

**Labor Code §§ 510 & 1198, 558 Payment for Overtime:** Labor Code requires employers to pay employees time and half (1.5) the employees' hourly rate for all hours worked in excess of eight hours per day and in excess of 40 hours per week; and double times the hourly rate for hours worked in excess of 12 hours per day, and eight hours on the seventh day worked in a week. NIKE engages in a policy and practice of suffering its non-exempt EMPLOYEES to work more than 8 hours in a day and/or forty hours in a work week by failing to compensate EMPLOYEES for reporting/waiting time at the beginning of their work schedule. In addition, EMPLOYEES must wait by the locked doors after clocking out for the manager to search their bags and persons, and for all other EMPLOYEES, at the time of store closing, since all EMPLOYEES must exit the store at the same time.

The waiting/reporting time is set by EMPLOYEES' schedule; however, upon arrival EMPLOYEES must wait outside by the locked doors for the manager to unlock the doors and allow EMPLOYEES to enter, clock-in, and begin work. NIKE knows that non-exempt EMPLOYEES must first call using their own personal cellphones to inform the manager who is in the store and appraise him/her of their arrival. This process takes several minutes per day. Despite this knowledge, NIKE fails to pay its non-exempt EMPLOYEES for overtime, double time, and

August 24, 2016
Page 5


straight time compensation for the hours they were suffered to wait prior to being allowed to work. If this unpaid wages for waiting time occurred during the first eight hours, then EMPLOYEES are entitled to straight time compensation. If the unpaid wages occurred after EMPLOYEES eight hours of work, then EMPLOYEES are entitled to time and half the regular rate of pay or double time for work in excess of 12 hours per day.

**Labor Code §§§ 1194, 1197, and 1197.1 Payment of Minimum Wages:** Labor Code requires payment of minimum wages for all hours worked. Labor Code sections 1194 and 1197 provide that it is unlawful to pay less than the minimum wage fixed by the Wage Orders. NIKE engages in a policy and practice of suffering its non-exempt EMPLOYEES to work for less than the minimum wage (1) by requiring all EMPLOYEES to pay for their UNIFORMS. The inclusion of 50% of the retail value of UNIFORMS in EMPLOYEES' wages as "Additional Taxable Other Compensation", subjects EMPLOYEES' to additional and improper income tax liability thereby causing their wages to fall below minimum wage. More specifically, this improper inclusion of the 50% retail value of UNIFORMS in EMPLOYEES' wages, reduces the EMPLOYEES' net pay and their average hourly rate falls below minimum wages for each pay period in which the UNIFORMS values were taxed; (2) EMPLOYEES' rate of pay falls below the minimum wage since employees are not paid reporting/waiting time until the manager allows EMPLOYEES into the store.

**Labor Code 246(a):** Labor Code 246(a) requires an employer to provide employees that work in California on or after July 1, 2015, for 30 or more days within a year from the commencement of employment, paid sick days to accrue at a rate of not less than one hour per every 30 hours worked or in the alternative must comply with the requirements of section 246(e)(2) or 246(b)(3).

Section 246(h) requires an employer to provide an employee with written notice that sets forth the amount of paid sick leave available, or PTO leave an employer provides in lieu of sick leave, for use on either the employee's itemized wage statement described in Section 226 or in a separate writing provided on the designated pay date with the employee's payment of wages.

NIKE fails to comply with the accrual rate specified in section 246(a) and also fails to comply with the written notice requirements of 246(h). NIKE EMPLOYEES' itemized wage statements contain blank sections under "Paid Time Off" …. "Balance" ….. "ESPP Period" … and "Balance." No reference is made to the amount of sick leave available on EMPLOYEES' wage statements. NIKE willfully fails to comply with the notice requirements and fails to provide EMPLOYEES with a separate writing on the designated pay date to set forth the amount of paid sick leave available.

**Labor Code § 247.5**(a): Labor Code requires an employer to keep for at least three yeas records documenting the hours worked and paid sick days accrued and used by an employee. An employer shall make these records available to an employee in the same manner as described in Section 226. NIKE also fails to comply with section 247.5(a) as it fails to provide an employee with the records reflecting accrued and used paid sick days and hours worked.

August 24, 2016
Page 6

**Labor Code §1198:** The Labor Code provides that labor conditions set by the Industrial Welfare Commission (Commission) shall be the standard labor conditions for employees. A Commission wage order provides that employees shall be provided suitable seating, if reasonable, during the performance of their duties. NIKE is in violation of Wage Order No. 7, subdivision 14 by failing to provide EMPLOYEES with suitable seating even though providing such seating is reasonable during the performance of their duties.

## CAL/OSHA VIOLATIONS:

**Labor Code §6400(a) and §6401:** Every employer shall furnish employment and a place of employment that is safe and healthful for the employees therein.   Labor Code requires every employer to adopt and use safeguards, practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe and healthful. Every employer shall do every other thing reasonably necessary to protect the life, safety, and health of employees.

**Labor Code §6306(a)** defines "Safe," "safety," and "health" as applied to an employment or a place of employment to mean such freedom from danger to the life, safety, or health of employees as the nature of the employment reasonably permits. Labor Code §6306 (b) states that "Safety device" and "safeguard" shall be given a broad interpretation so as to include any practicable method of mitigating or preventing a specific danger. *Id.* In direct failure to comply with this Code, NIKE requires all of its retails EMPLOYEES in California to carry walkie-talkies and interchange the wireless earphones used with the walkie-talkies. The Walkie-talkies and earphones are provided by NIKE and NIKE mandates that all EMPLOYEES carry the walkie-talkies and wear the earphone during working hours. To reduce the cost of doing business, NIKE fails to assign EMPLOYEES with earphones to be worn exclusively by each EMPLOYEE; rather, NIKE compels EMPLOYEES to interchange/share the earphones among themselves. NIKE has designated an earphone rack wherein all EMPLOYEES must surrender their earphones, when departing the store, by placing each earphone on the designated rack.   This unsanitary and unhealthful practice results in each earphone being interchanged several times per day by EMPLOYEES following direct contact with each EMPLOYEES' ear.   This unhealthful and unsanitary practice, exposes EMPLOYEES to the risk of various infections, illnesses, and diseases which are transmitted based on close contact with the skin, ear wax, and body fluids (sweat), causing bacteria, and virus from each EMPLOYEES' ear that easily travel through the earphone to other EMPLOYEES. NIKE's practice, is exactly the biological hazard, described in the *Informational Booklet on Industrial Hygiene, OSHA 3143-1998,* "Biological hazard, these include bacteria, viruses, fungi, and other living organisms that can cause acute and chronic infections by entering the body either directly or through breaks in the skin." The risk of infection caused by bacteria, viruses, fungi, and other living organisms that can cause acute and chronic infections by entering the body either directly or through breaks in the skin is seriously heightened if at least one of the EMPLOYEES sharing the earphone has bloody scabs around the ear.

August 24, 2016
Page 7

**Labor Code §6403(b) and §6407:** Labor Code §6403(b) specifically states that no employer shall fail or neglect to adopt and use methods and processes reasonably adequate to render the employment and place of employment safe; §6403(c) of the Code also requires that employers to do every other thing reasonable necessary to protect the life, safety, and health of employees. §6407 of the Labor Code imposes a mandatory compliance with the Occupational Safety and Health Standards, and "all applicable rules, regulations and orders pursuant to this division." A reasonable and adequate practice to render employment safe requires all NIKE retail locations to adopt a safe and healthful practice by assigning EMPLOYEES their own earphones. NIKE; however, failed and neglected to adopt this reasonable process and practice to protect the health, and safety of its EMPLOYEES. Similar to the specific requirements relating to Personal Protective Equipment clearly specified in Title 8 California Code of Regulations § 3380, 29 Code of Federal Regulation §1910.132(a), and CCR §3387 to be *maintained in a sanitary condition* and prohibiting their interchange among employees, earphones should not be interchanged among EMPLOYEES.

Earphones that clearly come into contact with EMPLOYEES' skin carries far more health risk than protective clothing which CCR §3387 prohibits employees from interchanging, and only under a limited circumstances said section allows employees to interchange clothing or devices, only if worn over shoes or outer clothing where no part of which contacts the skin of the wearer.

Various other sections expressly prohibit the very same biological hazards transmitted through the use of common earphones, such as the prohibition against common use of "other vessels" and "common utensils." (CCR §3363 (e); CFR 1910.141(b)(1)(vi))[1]. When several regulations prohibit "common use" … "interchanging" … "contact with skin" that results in transmitting and spreading of biological hazards, it reflects the importance of taking all necessary steps to avoid such hazards transmitted through interchange and/or common use.

No proper cleaning, or disinfecting is being undertaken by NIKE to maintain the earphones in a sanitary and healthful condition to eliminate the biological hazards associated with common use among its EMPLOYEES. In gross and reckless disregard to the health and safety of its EMPLOYEES, NIKE certainly does not "do every other thing reasonable necessary to protect the life, safety, and health of [EMPLOYEES]."

**Labor Code 6325:** Said earphone devices are in dangerous condition so as to constitute an imminent hazard to EMPLOYEES. Therefore, their continued use shall be prohibited and a conspicuous notice to that effect shall be attached on the earphones rack at each of NIKE's locations.

**Labor Code §6423, §6427, § 6428, and §6429:** California Labor Code §6423, §6427, § 6428, and §6429 provide civil penalties against an employer that commits violations of the Occupational Safety and Health Act.

---

[1] CCR §3363 (e), "The common use of a cup, glass or other vessel for drinking purposes is prohibited." CFR 1910.141(b)(1)(vi), "A common drinking cup and other common utensils are prohibited."

August 24, 2016
Page 8


The purpose of this letter is to satisfy the requirements created by California Labor Code section 2699 prior to seeking penalties allowed by law for the aforementioned violations.  We look forward to determining whether the agency intends to take any action in reference to these violations.


Sincerely,

Natalie Mirzayan, Esq.



## **EXHIBIT 3**

**STATE OF CALIFORNIA**                                                                                     **EDMUND G. BROWN JR.,** *Governor*

DEPARTMENT OF INDUSTRIAL RELATIONS
Division of Occupational Safety and Health
Santa Ana District Office
2000 E. McFadden Avenue, Suite 122
Santa Ana, CA  92705
Tel. # (714) 558-4451    Fax # (714) 558-2035

August 30, 2016

Natalie Mirzayan
26632 Towne Center Dr., Ste. 300
Foothill Ranch, CA  92610

Dear Natalie Mirzayan:

This letter is to acknowledge receipt of your complaint (Complaint No. 1130797) about safety and health hazards at Nike Tetail Services, Inc.  101 W. Avenida Vista Hermosa, #130 in San Clemente.  Your complaint will be handled in accordance with the policies and procedures of the Division.  You will be informed of the results of the inspection when they are available.

California law protects any person who makes a complaint about a workplace safety and health hazard from being treated differently, discharged or discriminated against in any manner by their employer.  If you believe that you have been discriminated against because you made a complaint to the Division of Occupational Safety and Health, you may file a discrimination complaint with the nearest office of the Division of Labor Standards Enforcement (Labor Commissioner).  However, you must file your complaint within six (6) months of the discriminatory action.

Thank you for your interest in safety and health.

Sincerely,

Richard Fazlollahi
District Manager

/af

reference: Complaint No. 1130797 - Ltr F - 135

# LAW OFFICES OF NATALIE MIRZAYAN



August 18, 2016

VIA E-MAIL
Richard Fazlollahi, District Manager
Santa Ana District Office
2000 E. McFadden Ave, Ste. # 122
Santa Ana, CA 92705
DOSHSA@dir.ca.gov

VIA E-MAIL
Labor & Workforce Development Agency
PAGAfilings@dir.ca.gov
Attn:  PAGA Administrator
1515 Clay Street, Suite 801
Oakland, CA  94612

VIA CERTIFIED MAIL
Nike Retail Services, Inc.
1 Bowerman Drive
Beaverton, OR 97005

Re:     ***Notification Of Workplace Safety and Health Hazards Against Nike Retail Services, Inc.***

Dear Mr. Fazlollahi:

This notification is provided in advance of a civil action under Labor Code Private Attorneys General Act of 2004, ("PAGA"), as required by §2699.3(b).  This office represents Mr. Omran Hamid ("Mr. Hamid") who is currently employed by Nike Retail Services, Inc. ("NIKE"). Mr. Hamid is currently employed at NIKE's Orange County retail store located at 101 W. Avenida Vista Hermosa # 130, San Clemente, CA 92672.

This letter is a notice and a request, pursuant to California Labor Code §2699.3 that your agency investigates the claims in this impending civil action.  If the agency does not intend to investigate the alleged violations, we specifically and respectfully request that you notify my office.   PAGA action is impending on behalf of Mr. Hamid and all other aggrieved and similarly situated current and former employees ("EMPLOYEES") at NIKE retail services, in San Clemente, and all other stores located in California, which upon information and believe, engage in the same unsanitary, unsafe, and unhealthful practices complained of in this letter.

August 18, 2016
Page 2

**Labor Code §6400(a) and §6401:** Every employer shall furnish employment and a place of employment that is safe and healthful for the employees therein.   Labor Code requires every employer to adopt and use safeguards, practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe and healthful. Every employer shall do every other thing reasonably necessary to protect the life, safety, and health of employees.

**Labor Code §6306(a)** defines "Safe," "safety," and "health" as applied to an employment or a place of employment to mean such freedom from danger to the life, safety, or health of employees as the nature of the employment reasonably permits.  Labor Code §6306 (b) states that "Safety device" and "safeguard" shall be given a broad interpretation so as to include any practicable method of mitigating or preventing a specific danger.  *Id.*  In direct failure to comply with this Code, NIKE requires all of its retails EMPLOYEES in California to carry walkie-talkies and interchange the wireless earphones used with the walkie-talkies.  The Walkie-talkies and earphones are provided by NIKE and NIKE mandates that all EMPLOYEES carry the walkie-talkies and wear the earphone during working hours.  To reduce the cost of doing business, NIKE fails to assign EMPLOYEES with earphones to be worn exclusively by each EMPLOYEE; rather, NIKE compels EMPLOYEES to interchange/share the earphones among themselves. NIKE has designated an earphone rack wherein all EMPLOYEES must surrender their earphones, when departing the store, by placing each earphone on the designated rack.   This unsanitary and unhealthful practice results in each earphone being interchanged several times per day by EMPLOYEES following direct contact with each EMPLOYEES' ear.   This unhealthful and unsanitary practice, exposes EMPLOYEES to the risk of various infections, illnesses, and diseases which are transmitted based on close contact with the skin, ear wax, and body fluids (sweat), causing bacteria, and virus from each EMPLOYEES' ear that easily travel through the earphone to other EMPLOYEES.  NIKE's practice, is exactly the biological hazard, described in the *Informational Booklet on Industrial Hygiene, OSHA 3143-1998,* "Biological hazard, these include bacteria, viruses, fungi, and other living organisms that can cause acute and chronic infections by entering the body either directly or through breaks in the skin."  The risk of infection caused by bacteria, viruses, fungi, and other living organisms that can cause acute and chronic infections by entering the body either directly or through breaks in the skin is seriously heightened if at least one of the EMPLOYEES sharing the earphone has bloody scabs around the ear.

**Labor Code §6403(b) and §6407:** Labor Code §6403(b) specifically states that no employer shall fail or neglect to adopt and use methods and processes reasonably adequate to render the employment and place of employment safe; §6403(c) of the Code also requires that employers to do every other thing reasonable necessary to protect the life, safety, and health of employees. §6407 of the Labor Code imposes a mandatory compliance with the Occupational Safety and Health Standards, and "all applicable rules, regulations and orders pursuant to this division."  A reasonable and adequate practice to render employment safe requires all NIKE retail locations to adopt a safe and healthful practice by assigning EMPLOYEES their own earphones.  NIKE; however, failed and neglected to adopt this reasonable process and practice to protect the health, and safety of its EMPLOYEES.  Similar to the specific requirements relating to Personal Protective Equipment clearly specified in Title 8 California Code of Regulations § 3380, 29 Code of Federal Regulation §1910.132(a), and CCR §3387 to be *maintained in a sanitary condition* and

August 18, 2016
Page 3

prohibiting their interchange among employees, earphones should not be interchanged among EMPLOYEES.

Earphones that clearly come into contact with EMPLOYEES' skin carries far more health risk than protective clothing which CCR §3387 prohibits employees from interchanging, and only under a limited circumstances said section allows employees to interchange clothing or devices, only if worn over shoes or outer clothing where no part of which contacts the skin of the wearer.

Various other sections expressly prohibit the very same biological hazards transmitted through the use of common earphones, such as the prohibition against common use of "other vessels" and "common utensils." (CCR §3363 (e); CFR 1910.141(b)(1)(vi))[1]. When several regulations prohibit "common use" … "interchanging" … "contact with skin" that results in transmitting and spreading of biological hazards, it reflects the importance of taking all necessary steps to avoid such hazards transmitted through interchange and/or common use.

No proper cleaning, or disinfecting is being undertaken by NIKE to maintain the earphones in a sanitary and healthful condition to eliminate the biological hazards associated with common use among its EMPLOYEES. In gross and reckless disregard to the health and safety of its EMPLOYEES, NIKE certainly does not "do every other thing reasonable necessary to protect the life, safety, and health of [EMPLOYEES]."

**Labor Code 6325:** Said earphone devices are in dangerous condition so as to constitute an imminent hazard to EMPLOYEES. Therefore, their continued use shall be prohibited and a conspicuous notice to that effect shall be attached on the earphones rack at each of NIKE's locations.

**Labor Code §6423, §6427, § 6428, and §6429:** California Labor Code §6423, §6427, § 6428, and §6429 provide civil penalties against an employer that commits violations of the Occupational Safety and Health Act.

The purpose of this letter is to satisfy the requirements created by California Labor Code section 2699 prior to seeking penalties allowed by law for the aforementioned violations. We look forward to determining whether the agency intends to take any action in reference to these violations.

With the kindest regards,

Natalie Mirzayan, Esq.

---

[1] CCR §3363 (e), "The common use of a cup, glass or other vessel for drinking purposes is prohibited." CFR 1910.141(b)(1)(vi), "A common drinking cup and other common utensils are prohibited."